WILLARD ROBERT SLEDGE v. BRYCE WAGONER, P. E. HODGES AND J. BERNARD PARKER, T/A BUS TERMINAL RESTAURANT AND MODERN GRILL.

(Filed 30 June, 1958.)

1. **Negligence § 4f—**
    A person entering a public restaurant to make a purchase is an invitee.

2. **Negligence § 4e—**
    The proprietor of a restaurant or store is not an insurer of the safety of his customers entering upon direct or implied invitation, but is under the legal duty to his patrons to exercise ordinary care to keep his prem-

ises, and all parts thereof to which persons lawfully present may go, in a safe condition for the use for which they are designed and intended, and to give warning of hidden dangers or unsafe conditions in so far as they can be ascertained by reasonable inspection and supervision.

**3. Negligence § 5—**

While foreseeability is an essential element of proximate cause, foreseeability does not import that the tortfeasor should have been able to foresee the injury in the precise form in which it occurred, but only that, in the exercise of reasonable care, consequences of a generally injurious nature might have been expected.

**4. Negligence § 4e— Evidence held sufficient for jury on issue of negligence causing fall of customer when his clothing caught on protruding rod of magazine rack.**

The evidence tended to show that a customer of a restaurant entered same by a swinging door, that table and chairs prevented the door from being opened fully, so that the customer had to sidle through, and that the cuff of his trousers caught on a wire protruding some 4 inches from the floor and one-half inch from a wire rod magazine rack, which was standing against the wall not over 4 inches from the door facing, causing the customer to fall to his injury. There was testimony that immediately after the injury the manager stated that he ought to have moved the magazine rack before somebody got hurt. *Held:* The evidence was sufficient to be submitted to the jury on the issue of negligence and did not disclose contributory negligence as a matter of law.

**5. Negligence § 19c—**

Nonsuit on the ground of contributory negligence may be allowed when, and only when, no other inference is reasonably deducible from the plaintiff's evidence.

APPEAL by plaintiff from *Phillips, J.,* at November Term, 1957, of RANDOLPH.

*Ottway Burton and Don Davis for plaintiff, appellant.*
*James B. Lovelace for defendants, appellees.*

JOHNSON, J. This is a civil action to recover damages for personal injuries sustained by the plaintiff as a result of falling on the floor of the defendants' restaurant.

The case comes here on appeal from judgment as of nonsuit entered on motion of the defendants at the close of the plaintiff's evidence.

The defendants' restaurant is located in the Union Bus Terminal in the City of High Point. The plaintiff entered the restaurant for the purpose of making a purchase. He entered through a swinging door leading from the waiting room into the grill. An upright magazine rack was standing with back to the wall just inside the door on the plaintiff's right as he entered. The rack was made of wire rod material. It stood not more than four inches back from the door facing

where the door pushed open. A table and some chairs close behind the swinging door kept it from opening full width and required the plaintiff to enter by stepping sidewise through the small opening of the door. After doing this, and upon taking his first step forward toward the serving counter, a snag on the magazine rack caught in the plaintiff's trouser leg, causing him to trip and fall and sustain a painful, disabling injury to one of his knees. While lying on the floor the plaintiff discovered the snag which caused him to trip: it stuck out from the bottom of the rack about half an inch, and was only about four inches up from the floor.

This in material part is the plaintiff's narrative of the occurrence: "After getting off work, I went from the furniture shop to the bus terminal in High Point . . . and went into the bus terminal grill for a little lunch around 12:30. . . . There is a door from the waiting room into the restaurant which is on the east side of the restaurant. . . . The door . . . is a hinged door which swings both ways, i. e., if one is inside the grill pushes to enter the waiting room, and vice versa to enter the grill from the waiting room. . . . On the north jamb of the door along the wall north of the door there is a combination magazine and newspaper rack sitting along the wall. This . . . rack is made of a sort of heavy wire rod material with frames upright. The wire rods are about a quarter or three-sixteenths of an inch in diameter. In the newspaper rack on the day in question there were newspapers and magazines both located in the rack. I would estimate the magazine and newspaper rack to be 3 feet. *The magazine and newspaper rack was not over 4 inches at the most back from the door facing.* (Italics added.)

". . . I came into the grill from the east side, went in, ordered some coffee and drank a couple of swallows. I then asked the manager, Mr. Wood, if I might check my bus schedule. I went to check the bus schedule at the ticket office and about that time a bunch of buses came in and there was a crowd in the waiting room and I started to enter back into the grill, using the swinging hinge door. I opened the door, pushing in, . . . Something behind the door hit, I sidled around to get in and as I went to make my step that magazine and newspaper rack caught my trousers, tripped me, and throwed me on my right knee.

"The floor of the bus terminal grill is a concrete floor and my whole weight fell on my right knee on the concrete floor. What had caught my trousers was a snag on the magazine and newspaper rack. The little snag which caught my trousers was about one-half an inch down on the bottom of the magazine rack as I entered in, going into the grill. As I went to make my step, it caught me in the cuff of my overalls leg and tripped me over and caused the injury to my knee. I

fell, grabbed my leg, and turned over on my left hip; then I looked to see what had tripped me. . . . The magazine rack . . . was pulled into the path of the door. Mr. Wood then came out and wanted to know if I was hurt. I told him my leg was hurt, that my knee was hurting me pretty badly. *He told me he ought to have moved that magazine rack before somebody got hurt.* He then moved the magazine rack and carried it out—that is the last time I saw the magazine rack. Mr. Wood said he was going to dispose of the magazine rack." (Testimony as to nature and extent of the injury omitted as not being pertinent to decision.) (Italics added.)

Cross Examination: ". . . This is not the first occasion I had been in the restaurant; I have been in there every day. I went through both the doorway that leads from the hall as well as the doorway that leads from the waiting room; on different occasions. . . . I never noticed what type of lights there were in the Bus Terminal Restaurant; however, it was well lighted. . . . The rack located in the Bus Terminal Restaurant on September 3, 1955, had a snag on it on the end which caught my trouser leg. The table behind the door (hinged swinging door) which I used to enter the grill after checking on my bus schedule was a table fixed for two people but there were three chairs around it on that day. . . .

"I did notice the magazine and newspaper rack because I turned around as I grabbed my leg (after falling) and I turned on an angle and saw it. It was as far as from the witness chair to the jury box, which is about 8 feet. At the time I was sitting up at an angle on my elbows, and I could see the rack 8 feet away from me, and from that distance I saw a little snag. The snag extended beyond the upright, the main upright outside the frame and I saw it with the good eyes I have. . . . I did not notice any newspapers extending over the end of the rack, they were all inside the rack.

"After I had been to see the ticket agent, I pushed on the swinging hinged door, opening toward the restaurant. When I pushed on it, it opened just far enough for me to sidle in. . . . I could have used another door down the hallway, which I wouldn't have to sidle in and there was nothing obstructing it, if I chose to go around that way. . . . I did not stump my toe over the magazine and newspaper rack. I did not knock the rack down. It was pushed around in the doorway as I went by; not with my toe. I pulled the rack with my pants cuff. As I sidled in, I was noticing the door, not noticing the rack, but I knew the magazine rack was there. . . . I could open the door 24 inches from the door facing to the corner of the table. . . .

". . . The part of my trousers which caught in the rack was the cuff of my overalls. I had rolled my overalls up to make a cuff. That is

the manner in which I worked at my job at Tomlinson's. . . . My cuff was up because it was too long. . . . Q. When you went in there and got caught some way you were not watching how you got caught? A. No sir. I was watching the door I was going in but it caught my trousers leg just the same. . . . I estimate the snag on the newspaper rack which tripped me to be half an inch and I am pretty good in guessing measurements. I stated that the height of the snag above the floor was about four inches from the floor. . . ."

The plaintiff was an invitee. *Lee v. Green & Co.*, 236 N.C. 83, 72 S.E. 2d 33; *Coston v. Hotel*, 231 N.C. 546, 57 S.E. 2d 793; *Pafford v. Construction Co.*, 217 N.C. 730, 9 S.E. 2d 408.

The proprietor of a restaurant, like an occupant of any building used for ordinary business purposes, who directly or by implication invites others to enter his place of business, is not an insurer of the safety of customers while on the premises, but is under the legal duty to his patrons to exercise ordinary care to keep his premises, and all parts thereof to which persons lawfully present may go, in a safe condition for the use for which they are designed and intended, and to give warning of hidden dangers or unsafe conditions in so far as can be ascertained by reasonable inspection and supervision. *Revis v. Orr*, 234 N.C. 158, 66 S.E. 2d 652; *Lee v. Green & Co., supra; Watkins v. Taylor Furnishing Co.*, 224 N.C. 674, 31 S.E. 2d 917. See also *Copeland v. Phthisic*, 245 N.C. 580, 96 S.E. 2d 697.

Those entering a restaurant, store, or other like business establishment during business hours for the purpose of making purchases or transacting business "do so at the implied invitation of the proprietor, upon whom the law imposes the duty of exercising ordinary care (1) to keep the aisles and passageways where customers are expected to go in a reasonably safe condition, so as not unnecessarily to expose the customer to danger, and (2) to give warning of hidden dangers or unsafe conditions of which the proprietor knows or in the exercise of reasonable supervision and inspection should know." *Lee v. Greene & Co., supra.*

In *Fanelty v. Jewelers*, 230 N.C. 694, 699, 55 S.E. 2d 493, 496, *Ervin, J.*, speaking for the Court, said: "It was undoubtedly the legal duty of the defendant in its capacity as a storekeeper to exercise ordinary care to keep the entryway to its shop in a reasonably safe condition for the use of customers entering or leaving the premises, and to warn them of hidden perils in the entryway known to it or ascertainable by it through reasonable inspection and supervision."

The evidence in this case when analyzed in the light of the controlling principles of law is sufficient, we think, to make out a *prima facie* case of actionable negligence for the jury.

The closest question in the case is the factor of foreseeability. The test of foreseeability as an element of proximate cause does not require that the tortfeasor should have been able to foresee the injury in the precise form in which it occurred. "All that the plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in 'the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.'" *Hart v. Curry*, 238 N.C. 448, 78 S.E. 2d 170. *Riddle v. Artis*, 243 N.C. 668, 91 S.E. 2d 894. See also *McIntyre v. Elevator Co.*, 230 N.C. 539, 54 S.E. 2d 45; *Hall v. Coble Dairies*, 234 N.C. 206, 67 S.E. 2d 63; *Boone v. Railroad Co.*, 240 N.C. 152, 81 S.E. 2d 380.

Tested by the foregoing rule, it is manifest that the plaintiff's testimony justifies the inference that the defendants should have foreseen that consequences of a generally injurious nature would likely result from their conduct in leaving the magazine rack so near the door, in or near the edge of the obstructed passageway leading into the restaurant, with a snag of the type described by the plaintiff, in the nature of a hidden peril, sticking out from the side of the rack near the floor. The crucial evidence bearing on this phase of the case is the statement made by the manager of the restaurant to the effect that "he ought to have moved that magazine rack before somebody got hurt." This statement with other corroboratory evidence suffices to make the question of foreseeability one for the jury.

We find no substantial merit in the defendants' contention that they are entitled to nonsuit on the ground of contributory negligence as a matter of law. Nonsuit on the ground of contributory negligence may be allowed when, and only when, no other inference is reasonably deducible from the plaintiff's evidence. *Donlop v. Snyder*, 234 N.C. 627, 68 S.E. 2d 316; *Caughron v. Walker*, 243 N.C. 153, 90 S.E. 2d 305; *Mallette v. Cleaners*, 245 N.C. 652, 97 S.E. 2d 245; *Bridgers v. Wiggs*, 245 N.C. 663, 97 S.E. 2d 119. The evidence as to this phase of the case is too inconclusive to justify the inference that the plaintiff was contributorily negligent as a matter of law.

The judgment as of nonsuit entered below is

Reversed.