FLORENCE GARNER v. ATLANTIC GREYHOUND CORPORATION AND HAL M. O'BRIEN, T/A CARDINAL GIFT SHOP.

(Filed 29 April, 1959.)

1. **Negligence § 4f(2)—**

    The proprietor of a store owes the duty to his customers of exercising ordinary care to keep that portion of the premises designed for their use in a reasonably safe condition so as not to expose them unnecessarily to danger, and to give warning of hidden dangers or unsafe conditions of which the proprietor knows or in the exercise of reasonable supervision should know.

2. **Same—**

    A proprietor is not an insurer of the safety of his customers, but may be held liable only for injuries resulting from negligence on his part.

3. **Landlord and Tenant § 11—**

    The fact that a proprietor of a store is a lessee does not relieve him from liability to a customer for a fall caused by the dangerous condition of the entrance to the store resulting from the plan of construction, since the fact that he is a lessee in no way lessens his duty of keeping the premises in a reasonably safe condition.

4. **Negligence § 4f(2)—**

    The doctrine of *res ipsa loquitur* does not apply to a fall of a customer on the premises of a store.

5. **Same—**

    While, in a customer's action to recover for a fall at the entryway of a store, the evidence is to be considered in the light most favorable to her, allegation that the place in question was slippery and uneven is to be disregarded when there is no evidence that the entryway was worn, broken or structurally imperfect.

6. **Same—**

    Evidence tending to show that the entryway to a store abutting some

12 feet along the sidewalk was even with the sidewalk at one end and was elevated some 6 inches above the sidewalk at the other end because of the grade of the street, does not disclose negligence in the construction or maintenance of the entryway.

**7. Same—**

Evidence that the entryway of a store had a declination of some 6/10 of a foot in the 42 inches between the doors of the store and the sidewalk does not disclose negligence in the construction or maintenance of the entryway.

**8. Same—  Evidence held insufficient to show that proprietor of store should have anticipated that customer would fail to perceive difference in levels because of asserted optical illusion.**

Evidence that the entryway of a store for the distance of some 42 inches from the doorway to the sidewalk was constructed of terrazzo and had a slope of some 6/10 of a foot, that it abutted the sidewalk for some 12 feet, that it was level with the sidewalk at one end but was elevated above the sidewalk some 6 inches at the other end because of the grade of the street, and that the sidewalk was ordinary concrete, *is held* insufficient to be submitted to the jury on the issue of the proprietor's negligence in causing the fall of a customer in stepping from the entrance to the sidewalk in broad daylight, on the ground that the slope of the entrance created an "optical illusion" preventing the customer from seeing the step-down, since, the material of the entryway and the sidewalk being different in fact, the proprietor, in the absence of evidence of knowledge on his part of the asserted optical illusion prior to the accident, was not under duty to anticipate that the different materials on different levels would look the same to the customer.

**9. Same—**

The proprietor of a store is not under duty to warn customers of a condition which is obvious, nor under duty to provide handrails at a stepdown of some 6 inches to the sidewalk at one end of the entrance to the store.

APPEAL by defendant, Hal M. O'Brien, trading as Cardinal Gift Shop, from *Gwyn, J.,* October 1958 Term of DAVIDSON.

This action was instituted by plaintiff against defendants, Atlantic Greyhound Corporation, hereinafter referred to as "Greyhound," and Hal M. O'Brien, trading as Cardinal Gift Shop, hereinafter referred to as "defendant," to recover for personal injuries received when she fell at the entrance of defendant's shop because of the alleged negligent construction and maintenance of the entryway. The answers denied negligence and pleaded contributory negligence.

At the close of plaintiff's evidence Greyhound, owner of the building, and defendant, shopkeeper and lessee, moved for judgment as of nonsuit. As to Greyhound, the motion was allowed; as to defendant, it was overruled. Defendant offered no evidence, renewed the motion

and excepted to the overruling of same. The jury answered the issues of negligence and contributory negligence in plaintiff's favor and awarded damages.

Plaintiff's evidence was substantially as follows:

Defendant owns and operates the Cardinal Gift Shop on Cherry Street in the City of Winston-Salem in a building leased by him from Greyhound. The shop is on the west side of Cherry Street. In front of the shop is an ordinary concrete sidewalk which slopes downwardly to the south. The entryway to defendant's shop serves two business establishments, the Stork Shop on the north side and the Cardinal Gift Shop on the south side. The entryway is 12 feet wide at the sidewalk and 8 feet 2 inches at the shop doors. It has a depth of 42 inches from the doors to the sidewalk. At the south end of the entryway there is a 6-inch perpendicular drop-off to the sidewalk; in the middle a 3-inch drop-off; and at the north end the entryway and sidewalk are approximately flush. There is a downward slope from the doors toward the sidewalk. The slope is 6/10 of a foot from the doors to the sidewalk, 2 5/16 inches per foot or a slope of 18% to 19%. The entryway is of terrazzo construction and has strips of abrasive material cemented to the terrazzo at intervals of 2 to 3 inches to prevent slipping thereon. There was no covering over the sidewalk.

The plaintiff lives in Thomasville and is 58 years old. On 27 June, 1955, she and Mrs. R. K. Farrington drove to Winston-Salem, left the automobile in a parking lot, ate lunch at a cafe and later went to defendant's shop. Plaintiff had visited this shop 3 or 4 times before, but she could not recall the time of her last previous visit. She entered the shop 2 to 4 feet north of the center of the entryway where the difference in grade of the sidewalk and entrance is slight. She and Mrs. Farrington were in the shop 25 to 30 minutes. They left about 1:00 p. m. Plaintiff came out ahead. The weather was clear. Plaintiff had nothing in her hand but her purse. She came to the sidewalk about 2 feet from the south end of the entryway where the drop-off is approximately 6 inches. At the drop-off she fell and was injured. She is over 5 feet tall and on this occasion was wearing shoes with medium heels, about 2 inches high. She has normal eyesight and wears glasses only for reading. There were not many people passing at the time. The plaintiff described the circumstances of her fall as follows:

"I was looking down where I was going and the entrance looked just like it went into the sidewalk all in one, the slope that goes down. I was not aware that there was a drop-off at the end of the slope, not that much. I stepped off and started falling. My foot hit right where it goes off on the drop-off. My heel was on the incline and the front

part of my foot was off on the sidewalk or about halfway on and half-way off. That made me go forward and fall and Mrs. Farrington hollered and said lookout and I turned to try to grab to something and there was nothing to grab to and I fell on my left hip. I did not see any warning sign nor any handrail nor anything to grab to. . . . I looked down as I came out of the Gift Shop. It looked like it went straight into the sidewalk. . . . (N)othing to prevent me from seeing 5 or 6 feet in front of me. . . . When I stepped out here my heel was right on there and the ball of my foot was out in space, just hanging. I fell. I fell so fast you can't tell. . . . It (the entryway) looked like it was just the plain sidewalk. . . . I have been back there and looked at the place and I can tell you that I could not see it because it looked like it all went into the sidewalk. . . . My heel caught because I didn't know the step was there . . .but it (the entryway and sidewalk) was the same color. . . . It looked practically all the same to me."

There was evidence as to injuries and the treatment thereof.

From judgment conformable to the verdict of the jury defendant appealed, assigning error.

*Charles F. Lambeth, Jr., for plaintiff, appellee.*
*DeLapp & Ward for defendant, appellant.*

Moore, J. Defendant's only assignment of error, except to the signing of the judgment, was to the failure of the court to sustain his motions for judgment of involuntary nonsuit. The sole question for decision here is whether upon the evidence the defendant, shopkeeper, failed in his duty to plaintiff, customer.

The duty of a shopkeeper with respect to the safety of cutomers is as stated in *Lee v. Green & Co.*, 236 N.C. 83, 85, 72 S.E. 2d 33, as follows: "Those entering a store during business hours to purchase or look at goods do so at the implied invitation of the proprietor, upon whom the law imposes the duty of exercising ordinary care (1) to keep the aisles and passageways where customers are expected to go in a reasonably safe condition, so as not unnecessarily to expose the customer to danger, and (2) to give warning of hidden dangers or unsafe conditions of which the proprietor knows or in the exercise of reasonable supervision and inspection should know. *Ross v. Drug Store*, 225 N.C. 226, 34 S.E. 2d 64; (and other cases there cited).

"However, such proprietor is not an insurer of the safety of customers and invitees who may enter the premises, and he is liable only for injuries resulting from negligence on his part. *Pratt v. Tea Co.*, 218 N.C. 732, 12 S.E. 2d 242; *Bowden v. Kress & Co.*, 198 N.C. 559,

152 S.E. 625." See also *Little v. Oil Corp.*, 249 N.C. 773, 776, 107 S.E. 2d 729, and *Sledge v. Wagoner*, 248 N.C. 631, 635, 104 S.E. 2d 195.

"The proprietor of a place of business which is kept open to public patronage is obligated to keep the approaches and entrances to his store in a reasonably safe condition for the use of customers entering or leaving the premises. The proprietor, however, is not under an insurer's liability in this respect. To hold a storekeeper liable in damages for injury to a customer who fell at the entrance to the store, the customer must show a failure on the part of the storekeeper to exercise reasonable care for the safety of customer." 38 Am. Jur., Negligence, Sec. 134, p. 795; Anno: 33 A.L.R. 222; 162 A.L.R., 986; 31 A.L.R. 2d 177.

"The fact that the proprietor of a store is a lessee of the premises upon which it is located in no way lessens his duty of keeping the premises reasonably safe for his customers." 38 Am. Jur., Negligence, Sec. 131, p. 791.

The doctrine of *res ipsa loquitur* has no application to a case in which recovery is sought for injuries received in a fall upon or from the entryway of a shop or store. In *Markham v. Stores Co.*, (Pa. 1926) 132 A. 178, 43 A.L.R. 862, the Court said: "It is first insisted that plaintiff failed to establish any actionable negligence on the part of the defendant. The burden rested upon her, for its presence is not to be presumed from the mere fact that the injury was caused by the fall at the entrance of the store. *Chapman v. Clothier*, 274 P. 394, 118 Atl. 356. The doctrine of *res ipsa loquitur* does not apply in such cases and the fact that damage was occasioned by some breach of duty must be affirmatively proved. (citing cases)." See also: *Lee v. Green & Co., supra; Fanelty v. Jewelers*, 230 N.C. 694, 699, 55 S.E. 2d 493; *Broadston v. Clothing Co.* (Neb. 1920) 178 N.W. 190; Anno: 33 A.L.R. 197 *et seq.*

In the instant case, in determining whether there was some breach of duty on the part of the defendant, the plaintiff is entitled to have the evidence considered in the light most favorable to her and to have the benefit of every reasonable inference of fact to be drawn therefrom. *Primm v. King*, 249 N.C. 228, 234, 106 S.E. 2d 223. But the evidence is to be considered within the framework of the allegations of the complaint. There must be both allegation and proof. *Poultry Co. v. Equipment Co.*, 247 N.C. 570, 572, 101 S.E. 2d 458.

The substance of plaintiff's allegations of defendant's negligence is that defendant knew, or in the exercise of due care should have known, of the defective, "dangerous and ruinous" condition of the entryway

and failed to correct the condition. It is alleged that the entryway was dangerous and defective in that: (1) it sloped from the doorway of the store toward the sidewalk; (2) the sloping surface was slippery and uneven; (3) at the sidewalk it "fell off vertically," at varying distances up to 6 inches; (4) the sloping entryway had the appearance of going straight into the sidewalk, creating an optical illusion and camouflaged effect, and constituted a latent defect; (5) no handrails or supports were provided along the slope; and (6) no warnings were posted.

There is no allegation or evidence that the entryway was worn, broken or structually imperfect, nor that it was wet or had any foreign substance thereon. There was no testimony that the plaintiff either slipped or tripped upon the entryway. Plaintiff's evidence is to the contrary. Therefore the allegation that the entryway was defective in that it was slippery and uneven is to be disregarded.

It is true that the entryway at the door was slightly more than 7 inches higher than at the sidewalk and the slope was about 19%. This circumstance alone does not render it dangerous and does not constitute negligent construction or maintenance. In *Fanelty v. Jewelers, supra,* the slope was much less, ½ inch per foot, and the Court said: ". . . the fact that the surface of the terrazzo flooring was smooth and sloped downward from the entrance door to the sidewalk was insufficient of itself to show negligent construction of the entryway." In *Hogan v. Building Co.* (Wash. 1922), 206 P. 959, it was held that defendant was not negligent in constructing and maintaining an entrance which had a slope of 11 inches in 7½ feet. In *Mullen v. Mercantile Co.,* (Mo. 1924), 260 S.W. 982, the entrance sloped about 1 inch per foot and the Court said: "Such entrances are used in business buildings, as much or more so than steps. We therefore hold that the slope of said incline of itself was no evidence of negligence." In *Schaefer v. De Neergaard,* (N. Y. 1921), 196 App. Div. 654, 188 N.Y.S. 159, the main contention of the plaintiff was that the ledge at the entrance should have been level or about level. Its slope was about 15% or 4½ inches in 2 feet and 10 inches. The Court held that there was a total absence of proof of negligence. The only case, which has come to our attention, that holds the mere slope of an entryway evidence of negligence to be submitted to the jury is *Long v. Breuner Co.,* (Cal. 1918), 172 P. 1132. In that case the slope was at places as much as 50%. In *Lunny v. Pepe,* (Conn. 1933), 165 A. 552, the elevation of a ramp inside a building was considered so slight (1 inch per foot) as to appear to be level. Dimness of light and sameness of appearance and color were other factors considered. Slope alone was not the basis for the decision. In

an Utah case the elevation of the entrance was considered only in connection with another factor. The Court said: "While it is true that the construction and maintenance of the entranceway of terrazzo on an inclined plane does not of itself constitute negligence, it comes within the rule that a negligent act may be one which 'creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature.' " *De Weese v. J. C. Penney Co.*, (Utah 1956), 297 P. 2d 898.

In the instant case the sloping of the entryway cannot be said to constitute negligence in and of itself. As we understand the testimony, plaintiff does not contend that her fall resulted from the slope of the entrance as such. It would seem that her contention is that the sloping was a part of what she termed "an optical illusion."

The complaint alleges that the perpendicular drop-off or step-down from the entryway to the sidewalk constituted a dangerous condition, especially in view of the grade of the sidewalk and the fact that the drop-off varied in height.

This Court in *Reese v. Piedmont, Inc.*, 240 N.C. 391, 395, 82 S.E. 2d 365, quoting from *Benton v. Building Co.*, 223 N.C. 809, 813, 28 S.E. 2d 491, said: "Generally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees." In the *Reese* case the step in question was 7¾ inches high. In the *Benton* case the step-down was 6 inches. In *Hadden v. Snellenburg*, (Pa. 1928), 143 A. 8, it is said: "It is not negligence *per se* or negligent construction in a store or other public place to have one floor at a lower level by a few inches than another." Here the difference in levels was 6 inches. In *Garret v. Theatres, Inc.*, (Mich. 1933), 246 N.W. 57, there was a 4½ inch step-down. The Court stated: "Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons." The same principles are declared in the following cases: *Boyle v. Preketes*, (Mich. 1933), 247 N.W. 763; *Kern v. Tea Co.*, (N.Y. 1924), 209 App. Div. 133, 204 N.Y.S. 402; *Watkins v. Bird Co.*, (CCA 8 C. 1929), 31 F. 2d 889; and *Sterns v. Hotel Co.*, (Mass. 1940), 29 N.E. 2d 721.

In *Hoyt v. Woodbury*, (Mass. 1909), 86 N.E. 772, we have an entryway substantially similar to the one in the instant case, with the added feature that the entryway itself was at two levels. The sidewalk was at a considerable grade, was about level with one part of the entrance and below the other portion. The entryway served two stores. The plaintiff stumbled at the step-up between the two levels of the

entryway as she left one of the stores. The two levels were made of the same design and color of tiling. The accident occurred on a sunny afternoon. Plaintiff sued the owner of the building, charging negligent construction and maintenance of the entryway. Speaking to the subject the Court said: "He owned a lot of land on a slight hillside, and it abutted upon a street which descended the hill. He had a right to improve his real estate in any reasonable way. He chose to maintain upon it a block with two stores separated by an entrance to upper stories. The problem which confronted him in doing this was so to arrange the means of access to these three entrances as to adapt them to the varying grade of the adjacent sidewalk. This could have been done in any one of several different ways. But it obviously must have been done in some way. So long as the present physical configuration of this commonwealth continues to exist, substantially the same difficulties will confront those who undertake to erect structures for use of the public. Methods may change, and facilities of access may grow better, but the situation of buildings abutting upon hilly streets will abide. Persons entering this building were charged with knowledge that they were not entering from a perfectly level sidewalk, and that generally the floors of buildings are not of precisely the same elevation as the sidewalk, even where it is level. Customers entering or leaving stores cannot be oblivious of these almost universally prevailing conditions. Owners of buildings have a right to proceed in their constructions in view of this common observation on the part of the public and assume in the actions of those, who may frequent their buildings, the exercise of ordinary circumspection as to their footing. Steps of greater or less height are the usual, although not the only, means of overcoming such differences in level as existed in this case between the street and the entrance. People cannot expect upon land obviously in private ownership next a street the same condition that they might anticipate in a public sidewalk. In arranging an approach to the store wider at the street line and converging toward the door and the approach to the upper floors at a conveniently higher level with a low step in ordinary form between, the defendant violated no duty which he owed to the plaintiff."

*Tyler v. Woolworth Co.,* (Wash. 1935), 41 P. 2d 1093, is another case involving a sloping sidewalk. There were three ramps or entrances to the store. These entryways sloped slightly from the store to the sidewalk. Two of them were about level with the sidewalk, the third had a drop-off ranging from 6 to 8 inches. Plaintiff entered at a ramp flush with the sidewalk and fell in leaving the store at the drop-off. Plaintiff had never been in the store before, the ramp was so

crowded she had to edge her way through to get out. There was judgment for the plaintiff, but the ground upon which recovery was allowed was the crowded condition of the ramp and the lack of opportunity of plaintiff to see and appreciate the danger. But in speaking of the construction and maintenance of the entryway itself, the Court said: "The mere fact that a step up or down, or a flight of steps up or down, is maintained at the entrance or exit of a building is no evidence of negligence, if the step is in good repair and in plain view. *Hollenbaek v. Clemmer,* 66 Wash. 565, 119 P. 1114, 37 L.R.A. (N.S.) 698. If the step is properly constructed, but poorly lighted, and by reason of this fact one entering the store sustains an injury, recovery may be had. On the other hand, if the step is properly constructed and well lighted so that it can be seen by one entering or leaving the store, by the exercise of reasonable care, then there is no liability."

In the instant case, the weather was clear, the entryway was not crowded, only a few persons were passing on the sidewalk, and the plaintiff was not carrying bundles of merchandise. In the absence of some unusual condition, the mere fact that the entryway and sidewalk sloped, and that there was a drop-off of varying height at the sidewalk, did not constitute negligence.

But plaintiff asserts that the entryway was defective and dangerous for the reason that it, in conjunction with the sidewalk, created an optical illusion or camouflaging effect and made it appear that there was no drop-off.

In *Mulford v. Hotel Co.,* 213 N.C. 603, 197 S.E. 169, a case involving the alleged imperceptibility of a step-down, it was held that the evidence made out a prima facie case of negligence. Plaintiff left a well lighted coffee shop and stepped into a dimly lighted basement which was at a lower level. The walls of the basement and coffee shop were the same color. Plaintiff testified that it all looked to be on the same level and that she did not see any difference. Other cases involving the idea of optical illusion or imperceptibility of change of level are: *Chain Stores, Inc., v. De Jarnette,* (Va. 1935), 178 S.E. 34; *Lunny v. Pepe, supra; Crouse v. Stacy-Trent Co.,* (N. J. 1933), 164 A. 294. In all of these cases the drop-off was inside a building, the lighting conditions were poor, and there was a similarity in color, design or material of the floor levels.

The case of *Touhy v. Drug Co.* (Cal. 1935), 44 P. 2d 405, presents perhaps the strongest authority for appellee's position. In the *Touhy* case the plaintiff made a purchase at a soda fountain. In order to be served she sat on a stool mounted on a raised platform. The platform was 7 inches above the floor level. The platform and floor were covered

with the same design, size and color of tiles. In leaving the fountain plaintiff fell at the drop-off. Plaintiff recovered judgment. The decision rested solely on the deceptive appearance caused by the tiling.

However, it is observed that the *Touhy* case involved a situation inside a building. No case has come to our attention where recovery has been allowed on the basis of optical illusion where the situation existed outside a building in full daylight.

In the case at bar it was 1:00 p. m. The weather was clear. Plaintiff's view was entirely unobstructed. She had normal eyesight. The fall occurred in open daylight. It is true that she testified that "the entrance looked just like it went into the sidewalk all in one, the slope that goes down. . . . It looked like it was just the plain sidewalk. . . . (I)t was the same color. . . . It looked practically all the same to me." In *Hoyt v. Woodbury, supra,* both levels in the vicinity of the fall were paved with identical black and white tile, yet there was a holding upon all the evidence of no negligence. It will be observed that the fall in that case took place in daylight. Bearing in mind, in the instant case, that there was similarity in the colors of the entryway and sidewalk, yet from plaintiff's own evidence there was a difference in material and design. The sidewalk was of ordinary concrete construction. The entryway was of terrazzo construction. Terrazzo "consists of small chips of marble set irregularly in cement and polished." *Fanelty v. Jewelers, supra;* Webster's New International Dictionary, Unabridged, Second Edition, 1951. Abrasive materials were cemented onto the terrazzo surface at intervals of 2 to 3 inches to prevent slipping. The surfaces "looked the same" to the plaintiff, but according to her evidence were not the same. In *Reese v. Piedmont, Inc., supra,* the surfaces in question were indoors and seen partially, at least, by artificial light. There was a black rubber mat on the lower level, and the upper level was covered with black and white tile. Yet the plaintiff in that case said: "I did not observe any change in the level of the floor. . . . It all looked the same." As in the instant case, it looked the same to the plaintiff, but was not the same in fact. In the *Reese* case this Court affirmed the judgment of involuntary nonsuit. When the material and design of the two levels are not the same in fact, is the defendant under duty to anticipate that they will appear the same to another? We think not. If in fact they did on occasion look the same to others, there is no evidence in this case that the defendant had any knowledge thereof prior to the time of plaintiff's fall. The alleged "optical illusion" under the facts and circumstances in this case was not a defect or danger against which the defendant had a duty to guard.

With respect to the alleged failure to give warning, it sufficeth to quote from *Benton v. Building Co., supra,* as follows: "Where a condition of premises is obvious . . . generally there is no duty on the part of the owner of the premises to warn of that condition. *Sterns v. Highland Hotel Co.,* 307 Mass., 90, 29 N.E. 2d 721. There is no duty resting on the defendant to warn the plaintiff of a dangerous condition provided the dangerous condition is obvious. *Mulkern v. Eastern S. S. Lines,* 307 Mass., 609, 29 N.E. 2d 919." See also *Hunnewell v. Haskell,* (Mass. 1899), 55 N.E. 320. As to the failure of defendant to provide handrails, under the facts and circumstances of the case the defendant was under no duty to provide handrails at the ordinary step-down described in this case, which was in plain view and broad daylight. *Hunnewell v. Haskell, supra.*

It is our opinion, and we so hold, that the motion for judgment of involuntary nonsuit should have been allowed.

Reversed.