Mattie O. WOODARD, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. C-57-D-58.

United States District Court
M. D. North Carolina,
Durham Division.

June 22, 1960.

Brooks & Brooks, Durham, N. C., for plaintiff.

James E. Holshouser, U. S. Atty., Greensboro, N. C., for defendant.

EDWIN M. STANLEY, District Judge.

This action arises under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680, and asserts a claim for personal injuries allegedly sustained by the plaintiff when she slipped and fell while entering the Veterans Administration Hospital in Durham, North Carolina.

Proposed findings of fact and conclusions of law and briefs of the parties having been received, the court, after considering the pleadings, testimony of the various witnesses, exhibits and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

### Findings of Fact

1. The Veterans Administration Hospital at Durham, North Carolina, an agency of the United States of America, was constructed and completed in 1953, in accordance with plans and specifications approved by officials of the Veterans Administration, and since the date of construction has been operated as a veterans hospital.

2. From the time said hospital was completed in 1953, to and including September 29, 1957, there were two principal entrances to said hospital, one being the main entrance, which was customarily used by persons visiting the hospital, and the other being the ambulance entrance, which was customarily used for taking ambulance patients to and from the hospital.

3. From the time said hospital was completed in 1953, to and including September 29, 1957, there was a rampway leading to the hospital entrance, which rampway had a width of twenty-four feet and a depth of eight feet, and was covered by a roof which extended two feet beyond the outer edge of the rampway. Said rampway was of concrete construction, had a hard, smooth trowel finish, and an incline of about 10% from the outer edge of the rampway to the entrance doors.

4. From the time the hospital and rampway were completed in 1953, to and including September 29, 1957, nothing had been done to the rampway leading to the ambulance entrance, and no change whatever in construction or otherwise had been made to said rampway. During all of said period, the ambulance entrance, including the rampway, had been in constant daily use during all types of weather.

5. On September 29, 1957, at about 2:30 o'clock p. m., which was during regular visiting hours, the plaintiff, in company with her husband, went to said hospital for the purpose of visiting plaintiff's cousin, who was a patient in the hospital. It had been raining intermittently during the morning and early afternoon, and was raining at the time

the plaintiff and her husband arrived at the hospital. The rain had caused the rampway leading to the ambulance entrance to become wet and slippery.

6. The plaintiff and her husband parked their automobile in one of the hospital parking lots and walked from the parking lot to the hospital. They reached the ambulance entrance to the hospital before reaching the main entrance. The plaintiff was walking in front of her husband and attempted to enter the hospital at the ambulance entrance. While walking up the rampway, the plaintiff slipped and fell, injuring her left hip. Immediately before falling, plaintiff had turned and looked back in the direction of her husband.

7. The plaintiff had visited the hospital on prior occasions, and had always used the main entrance. She knew that the entrance used on the occasion in question was the ambulance entrance, and had seen ambulances at said entrance on prior occasions. The only sign or warning at the ambulance entrance was the following clearly visible sign on the front of the roof covering the rampway: "Ambulance Entrance."

8. In addition to its customary use by ambulances, the ambulance entrance was used by several hundred people each day entering and leaving the hospital. This use had been made since the hospital was constructed, and during all types of weather, and no one had fallen or had been injured at the hospital entrance or on the rampway prior to the injuries sustained by the plaintiff on September 29, 1957.

9. As the plaintiff approached the rampway and attempted to enter the hospital at the ambulance entrance, she noticed that the rampway was smooth, wet and slick. The plaintiff had a clear and unobstructed view of the entire ambulance entrance, including the rampway, as she approached the rampway and attempted to enter the hospital.

10. Immediately following her fall and injury, the plaintiff was taken into the hospital where X-ray films were made of her hip by members of the hospital staff. Following the making of the X-ray films, plaintiff was advised that her hip was not fractured. Later that afternoon, plaintiff returned to her home. The following afternoon representatives from the hospital went to plaintiff's home and advised her that a subsequent examination of the X-ray films revealed that she had suffered a fractured hip. No charge was made for the services rendered the plaintiff at the hospital on the afternoon of her injuries.

11. On September 30, 1957, the plaintiff was admitted to a private hospital in Durham, North Carolina, for the treatment of her injuries, where she remained until October 12, 1957. As the result of said injuries, the plaintiff has expended a considerable sum of money for hospital care and medical treatment, and has suffered much pain.

## Discussion

It is first necessary to determine the status of the plaintiff at the time of her injury, for there is a different degree of duty owed by the owner of premises to an invitee than that owed to a licensee. Pafford v. J. A. Jones Const. Co., 1940, 217 N.C. 730, 9 S.E.2d 408; Hood v. Queen City Coach Company, 1959, 249 N.C. 534, 107 S.E.2d 154. The plaintiff contends that she was an invitee at the hospital of the defendant on the occasion in question, and that the defendant breached its legal duty to keep its premises in a reasonably safe condition and give her warning of hidden peril. The defendant, while denying that it breached any duty owing to the plaintiff, even as an invitee, contends that when plaintiff attempted to enter the hospital at the ambulance entrance she was a mere licensee until she reached that part of the premises normally used by visitors at the hospital, and relies on such cases as Wilson v. Dowtin, 1939, 215 N.C. 547, 2 S.E.2d 576, and Cupita v. Carmel Country Club, Inc., 1960, 252 N.C. 346, 113 S.E.2d 712, in support of its position.

The case of Hamlet v. Troxler, 4 Cir., 1956, 235 F.2d 335, is clear authority for holding that a person visit-

ing a relative at a hospital, and using the customary places of ingress and egress, occupies the status of an invitee. In view of the fact that several hundred people had made daily use of the ambulance entrance as a means of ingress and egress from the date the hospital was constructed until the date of plaintiff's injury, and the further fact that no official of the defendant had ever protested such use, it is held that the use of the ambulance entrance by the plaintiff upon the occasion here involved did not change her status from that of an invitee to that of a licensee.

■ The existence of actionable negligence on the part of the defendant is to be determined in accordance with state law. The general legal principles governing liability in cases of this type, including the duty of proprietors of buildings to invitees on their premises, have frequently been stated by the North Carolina Supreme Court.

■ The consensus of these authorities is that proprietors of buildings are not insurers of the safety of invitees while on their premises, and that they owe "only the duty to exercise ordinary care to keep the premises in a reasonably safe condition and to give warning of hidden perils or unsafe conditions in so far as can be ascertained by reasonable inspection and supervision." Watkins v. Taylor Furnishing Co., 1944, 224 N.C. 674, 31 S.E.2d 917, 918. In the absence of a negligent breach of this duty, there can be no liability. Brown v. Montgomery Ward & Co., 1940, 217 N.C. 368, 8 S.E.2d 199; Cupita v. Carmel Country Club, Inc., 1960, 252 N.C. 346, 113 S.E.2d 712. The doctrine of *res ipsa loquitur* has no application to the situation here involved, and negligence is not to be presumed, and no inference of actionable negligence arises, from the mere fact that the plaintiff slipped and fell as she attempted to enter the hospital. The fact that her injury and damage was occasioned by some breach of duty must be affirmatively proved. Garner v. Atlantic **Greyhound Corporation,** 1959, 250 N.C.

151, 108 S.E.2d 461; Watkins v. Taylor Furnishing Co., 1944, 224 N.C. 674, 31 S.E.2d 917. The showing that the surface of the rampway was smooth and wet is insufficient of itself to show negligent construction or maintenance of the rampway. Fanelty v. Rogers Jewelers, Inc., 1949, 230 N.C. 694, 55 S.E.2d 493. Persons are only liable "for the consequences of occurrences which they can and should foresee, and by reasonable care and prudence quard against." Watkins v. Taylor Furnishing Co., 1944, 224 N.C. 674, 31 S.E.2d 917, 918. There is no duty resting upon the proprietor of a building to warn invitees of a dangerous condition, provided the dangerous condition is obvious, for "knowledge of the danger is equivalent to prior notice." Beaver v. Town of China Grove, 1942, 222 N.C. 234, 22 S.E.2d 434, 436. Also see Garner v. Atlantic Greyhound Corporation, 1959, 250 N.C. 151, 108 S.E.2d 461, and Presley v. C. M. Allen & Co., 1951, 234 N.C. 181, 66 S.E.2d 789, and the cases cited in those decisions.

In light of the foregoing legal principles, we turn now to the question of whether or not the evidence affirmatively shows that the defendant negligently failed to exercise ordinary care to have its premises in a reasonably safe condition, and give the plaintiff timely notice or warning of some hidden or concealed peril. The question must be answered in the negative.

The rampway leading to the ambulance entrance was purposely constructed with a hard, smooth finish for convenience in taking ambulance patients to and from the hospital. Any dangerous or hazardous condition to pedestrians using the rampway was open and obvious. The plaintiff testified that as she approached the rampway, and prior to the time she fell, she could see that the rampway was of a smooth surface, and that it was wet and slick. Thus, evidence of hidden or concealed peril is totally lacking. As earlier noted, there was no duty resting upon the defendant to warn the plaintiff of a dangerous condition, provided the

dangerous condition was obvious. The plaintiff's evidence affirmatively shows that she was fully mindful of the condition of the rampway, and the fact that it was smooth, wet and slick.

Neither is there proof that any dangerous or hazardous condition which might have existed was legally foreseeable by the defendant. For more than four years, and during all types of weather, hundreds of people had made daily use of the ambulance entrance as a means of ingress and egress. So far as is revealed by the evidence, no one had previously slipped or fallen on the rampway, and no notice had been given the defendant of any dangerous or hazardous condition. To hold for the plaintiff would be tantamount to holding that proprietors of buildings are insurers of the safety of invitees on their premises, and would require application of the doctrine of *res ipsa loquitur*. Such would be contrary to the uniform holdings of the courts of this State.

■ The burden rested upon the plaintiff to establish actionable negligence on the part of the defendant proximately causing her injury. She failed to carry this burden, and it follows that the defendant is entitled to a judgment dismissing the complaint.

While the conclusion reached with respect to the issue of negligence makes unnecessary a discussion of the issue of contributory negligence, it might be well to note that the record in this case discloses that the plaintiff failed to exercise due care for her own safety, and that such failure to exercise due care contributed to and was a proximate cause of her unfortunate injury.

Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. The injury and damage sustained by the plaintiff did not result from any actionable negligence on the part of the defendant.

3. The defendant is entitled to a judgment dismissing the complaint.