BETTY HARRISON v. ROBERT A. WILLIAMS, JR., TRADING AND DOING BUSINESS AS HENRY'S DRIVE-IN RESTAURANT AND TRAILER PARK.

(Filed 30 October 1963.)

**1. Negligence § 37a—**

Evidence that patrons of defendant's dining room frequently went into the kitchen area of the premises to pay their bills and that on the occasion in question plaintiff was directed by defendant's employee to go into that area to purchase cigarettes at a vending machine, *held* sufficient to support a finding that plaintiff was an invitee at the time and place of her fall in the kitchen area.

**2. Negligence § 37b—**

A proprietor owes his invitees the legal duty to maintain the aisles and passageways of his place of business in such condition as a reason-

ably careful and prudent person would deem sufficient to protect patrons from danger while exercising ordinary care for their own safety.

**3. Same—**

Ordinarily, the existence of a step between floor levels raises no inference of negligence on his part of the proprietor.

**4. Negligence § 37f—**

Evidence to the effect that plaintiff, in going as directed by defendant's employee to purchase cigarettes at a vending machine, failed to see a step downward between floor levels because the area was "dimly lighted," without evidence as to the amount, kind, or location of the lights then burning or the difference in the floor levels, *is held* insufficient to be submitted to the jury on the issue of defendant's negligence.

APPEAL by plaintiff from *Parker, J.*, May Civil Session 1963 of NEW HANOVER.

Plaintiff's action is to recover damages for personal injuries she sustained as a result of a fall while in defendant's place of business, known as "Henry's Drive-In Restaurant and Trailer Park," located on the west side of Highway #421, south of Wilmington, N. C. Defendant was engaged in the business of "preparing and serving to 'Drive-In and dining room' customers plate lunches, sandwiches, cigarettes, soft drinks, and other lawful beverages."

Plaintiff alleged her fall and injuries were proximately caused by the negligence of defendant in respects referred to in the opinion.

Answering, defendant denied negligence and conditionally pleaded the contributory negligence of plaintiff.

The only evidence was that offered by plaintiff. Exclusive of the testimony of a doctor, the evidence consists of the testimony of (1) plaintiff, (2) Michael A. Harrison, plaintiff's husband, (3) George Montford, and (4) Mary Hines. The pertinent evidence as to plaintiff's actions prior to her fall and injury, summarized or quoted, is set forth below.

On the night of September 5, 1961, Mr. Montford, accompanied by plaintiff and her husband, drove to defendant's place of business. They arrived "about 8:40" and parked "almost in front of the main dining room." While so parked, a 7-Up was ordered for each of the men and a Coca-Cola for plaintiff. They were served. Two "girls," Mrs. Lou Hall and Mrs. Sadie West, were waiting on the customers in the parked cars.

A "few minutes"—"about 15 or 20 minutes" after their arrival, plaintiff told her husband she was going to the ladies' rest room and got out of the car. Since "the girls were mighty busy and you could not flag or yell them down," plaintiff's husband handed her a dollar bill and asked her to bring him "a pack of cigarettes."

HARRISON *v.* WILLIAMS.

Plaintiff "had been in this Drive-In on numerous occasions before this accident" but she and those with her had always gone "in the second dining room to eat." On this occasion, plaintiff entered "the main dining room." The ladies' room was in "the large dining room." When plaintiff "was there before," there "was a cigarette machine in the lower corner" but "it was missing." No one was in "this Dining Room." She looked for a waitress but there was no waitress in the dining room(s). The "girls" were outside. On previous occasions, plaintiff and her husband had gotten their own cigarettes "out of the machines."

Between the main or large dining room and the kitchen area, there was a "small dining room," sometimes referred to as the "second dining room." Plaintiff walked "through the large dining room, . . . through the small dining room to the kitchen." There she found a girl known to her as "Ann," who was sitting "at a little counter, . . . sitting there working." Plaintiff told Ann she wanted to get some cigarettes, handed Ann the dollar and Ann gave plaintiff the change. Ann told plaintiff "the cigarette machine is down there," pointing to the end of the counter. Ann, the only girl "in there," had her hands full. Plaintiff walked "into the area between the kitchen and the counter by direction." When plaintiff "started to come around the counter," she "didn't see the step-down" and fell.

Other evidence bearing upon the alleged negligence of defendant will be set forth in the opinion.

At the conclusion of plaintiff's evidence, the court, allowing defendant's motion therefor, entered judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*Wm. K. Rhodes, Jr., for plaintiff appellant.*
*Royce S. McClelland and L. Bradford Tillery for defendant appellee.*

BOBBITT, J.   The only question is whether the court erred in granting defendant's motion for judgment of involuntary nonsuit. Decision depends upon whether the evidence, when considered in the light most favorable to plaintiff, is sufficient to support a finding that plaintiff's fall and injuries were proximately caused by the negligence of defendant.

It is unnecessary to restate the familiar and well settled general legal principles pertinent to decision on this appeal. This has been done in numerous cases including the following: *Reese v. Piedmont, Inc.,* 240 N.C. 391, 82 S.E. 2d 365; *Sledge v. Wagoner,* 248 N.C. 631, 104 S.E. 2d 195; *Skipper v. Cheatham,* 249 N.C. 706, 107 S.E. 2d 625; *Garner v. Greyhound Corp.,* 250 N.C. 151, 108 S.E. 2d 461, 81 A.L.R. 2d 741.

Defendant contends plaintiff fell in a portion of his premises not designed for use by patrons and was not an invitee with reference to the place where she fell. However, there was evidence that patrons of the dining rooms frequently went into the kitchen area of the premises to pay their bills. Too, there was evidence that plaintiff, having obtained change for the express purpose of buying cigarettes, was proceeding as directed by defendant's employee. *Cupita v. Country Club,* 252 N.C. 346, 113 S.E. 2d 712, cited by defendant, is readily distinguishable. In our view, there was sufficient evidence to support a jury finding that plaintiff was an invitee at the time and place of her fall and injury.

Defendant owed plaintiff, as invitee, the legal duty to maintain the aisles and passageways of its place of business in such condition as a reasonably careful and prudent proprietor would deem sufficient to protect patrons from danger while exercising ordinary care for their own safety. *Skipper v. Cheatham, supra; Sledge v. Wagoner,* 250 N.C. 559, 109 S.E. 2d 180.

"Generally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees." *Benton v. Building Co.,* 223 N.C. 809, 28 S.E. 2d 491; *Reese v. Piedmont, Inc., supra; Garner v. Greyhound Corp., supra.*

"Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it." *Garrett v. W. S. Butterfield Theatres, Inc.* (Mich.), 246 N.W. 57. This statement is quoted with approval in *Reese v. Piedmont, Inc., supra,* and in *Garner v. Greyhound Corp., supra.* The mere fact there was a step downward or change in floor level raises no inference of negligence against defendant. *Reese v. Piedmont, Inc., supra;* Annotation: 65 A.L.R. 2d 471, *482.*

Plaintiff alleged the area in which the step was located "was not adequately lighted." She alleged defendant was negligent in that he failed to provide sufficient light to disclose the step and failed otherwise to give warning thereof and that, absent sufficient lighting or warning, the step constituted a dangerous condition, and that in these respects defendant failed to exercise reasonable care to provide a reasonably safe aisle or passageway for use of his invitees-customers.

There was no allegation or evidence that the step was defective in any respect. Plaintiff alleged it was "a steep step downward," descend-

ing from "one floor level down *several* inches to another floor level." (Our italics).

Plaintiff's evidence tends to show there was *a step downward*. No evidence was offered purporting to describe the step. The evidence is vague as to its exact location. There is no evidence as to the difference in floor levels. If the difference in floor levels was sufficient to constitute notice of the step, this legal principle would be pertinent: "Where a condition of premises is obvious to any ordinarily intelligent person, generally there is no duty on the part of the owner of the premises to warn of that condition." *Benton v. Building Co., supra; Reese v. Piedmont, Inc., supra.* Plaintiff testified she "was thoroughly familiar with the lay-out of that Drive-In." However, she also testified she "had not been around that direction before."

Plaintiff relies primarily upon her contention that the aisle or passageway she was directed to use, particularly the step, was insufficiently lighted. She alleged the area where the cigarette vending machine was located "was dimly lighted" and that the step "could not be clearly seen or detected in the dim and insufficient light."

Plaintiff's husband testified the cigarette vending machine was in the area referred to as the Grill; that the cash register was in the Grill; and that "you had to go through the kitchen to get to the Grill." Presumably, although here as elsewhere the evidence is vague, there is no partition between the area referred to as the kitchen and the area referred to as the Grill. No evidence indicates the dimensions of kitchen, Grill or any other portion of defendant's place of business. No evidence indicates the height, length, etc., of the counter referred to in plaintiff's testimony. (Note: No diagram or photograph was offered to illustrate or explain testimony.)

Plaintiff testified "(i)t was dark in there" when she started to come around the counter; that she "didn't see the step-down"; that she "didn't realize there was a step there"; and that "(t)here was overhead light, but in that corner there was not." On cross-examination she testified: "The floor was not well lighted. At the floor there was no light. There were overhead lights. I didn't look up to see what kind. There was not light enough where I stepped down. . . . I am saying it was not light enough for me to see it automatically when I walked around the corner. I didn't know the step-down was there, and there were no signs to indicate there was one there."

Mary Hines, a witness for plaintiff and a former employee of defendant, testified: "(T)here were flourescent lights overhead from the Grill but not over the step"; that "(t)here were three but most of the time only one on"; and that she was not working, was not present and

did not know what lights were on when plaintiff fell. Plaintiff offered no evidence as to the location of the three overhead flourescent lights, or as to how many were burning on the occasion of plaintiff's fall.

The word "dark," a relative term, used by plaintiff on direct examination, must be considered with plaintiff's testimony on cross-examination that "it was not light enough for (her) to see it *automatically when* (she) walked around the corner." (Our italics). This testimony suggests that plaintiff by the exercise of due care could have observed the step but failed to do so. Plaintiff's husband and Montford had been patrons of defendant's place of business on numerous prior occasions. Although they arrived on the scene shortly after plaintiff fell, they did not testify with reference to the step or with reference to the location and number of lights.

Obviously, precise factual evidence was available. Suffice to say, plaintiff did not offer such evidence.

The conclusion reached is that the vague and indefinite evidence offered by plaintiff fails to disclose facts essential to a determination as to plaintiff's right to recover. Hence, on account of plaintiff's failure to offer sufficient evidence to establish actionable negligence on the part of defendant, the judgment of involuntary nonsuit is affirmed.

Affirmed.