KAREN CLODFELTER BRANKS v. DR. PAUL KERN AND ANIMAL EMERGENCY CLINIC, P.A.

No. 662PA86

(Filed 3 September 1987)

**Negligence § 30.1— cat bite during treatment by veterinarian—insufficient evidence of negligence**

In an action to recover for injuries received by plaintiff invitee when her cat bit her while the cat was undergoing a catheterization by defendant veterinarian, plaintiff's forecast of evidence was insufficient to enable the jury to find that defendant veterinarian violated a duty of care to plaintiff by failing to restrain plaintiff's cat or by failing to warn plaintiff of the risks of remaining in close proximity to the cat during the procedure where it showed that plaintiff was in as good a position as the veterinarian to appreciate the danger that the cat would try to bite someone in his immediate vicinity, and plaintiff's own testimony established that, before the cat bit plaintiff, he had been unambiguously revealed as a hazard to anyone of ordinary intelligence when he tried to bite the veterinarian's assistant.

Justices MARTIN and WEBB did not participate in the consideration or decision of this case.

ON grant of defendants' petition for discretionary review of the decision of the Court of Appeals, 83 N.C. App. 32, 348 S.E. 2d 815 (1986), reversing summary judgment for defendants entered 9 December 1985 by *Lamm, J.* Heard in the Supreme Court 13 May 1987.

*C. David Gantt, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Russell P. Brannon and Michelle Rippon, for defendant-appellant Kern, and Harrell and Leake, P.A., by Larry Leake, for defendant-appellant Animal Clinic.*

FRYE, Justice.

Plaintiff sued her veterinarian after she was bitten by her own cat while it was being treated by the veterinarian. The Court of Appeals held that plaintiff had shown a sufficient forecast of evidence to enable a jury to find that the veterinarian violated a duty of due care to the plaintiff. We disagree and reverse the Court of Appeals' decision.

The plaintiff in the instant case owned a cat named Sam. Sam suffered from feline urethral syndrome, a condition common in neutered male cats, marked by inflammation of the bladder and the production of stones. These stones can completely block the cat's urethra and cause the cat's death if the blockage is not treated. The normal treatment is to catheterize the cat. Sam unfortunately suffered three or four such blockages. His last attack occurred on 21 April 1984. Plaintiff took him to defendant clinic for treatment. Plaintiff and Sam were shown into an examining room, where defendant Dr. Kern examined the cat. Dr. Kern determined that Sam needed to be catheterized once again.

Dr. Kern decided to attempt the catheterization without the use of an anesthetic. Plaintiff contends that the decision was the veterinarian's alone; defendants contend that plaintiff's reluctance to spend any more money on the cat entered into the decision to attempt the procedure without anesthesia. In any event, plaintiff does not contend that this decision was in any way medically improper. More importantly, plaintiff admits that Dr. Kern informed her beforehand of the decision. Thus, it is uncontroverted that plaintiff knew that no anesthetic was being used.

Dr. Kern instructed an assistant to hold the cat and began the catheterization. Sam kept squirming and trying to get away. Plaintiff testified in her deposition that she realized from his behavior that Sam was in pain, and moreover was in more pain than he had been during the two previous catheterizations. Plaintiff put her hands over Sam's paws to try to soothe him. As she described it, about five minutes into the procedure the assistant "let go" of Sam,[1] who promptly tried to bite the assistant. Dr.

---

1. Plaintiff's attorney argued before this Court that the veterinarian's assistant "dropped" the cat. However, plaintiff testified at her deposition that the cat was on the examining table when the assistant "let go." There is no basis for arguing that the assistant "dropped" the cat.

Kern stopped and made an unsuccessful attempt to put a muzzle on Sam. When this attempt failed, the assistant renewed his grip on the cat. Dr. Kern resumed his task, and plaintiff once more placed her hands over Sam's paws, a mere three inches away from the cat's face. About five minutes later, according to the plaintiff, the veterinarian's assistant once again "let go" of the squirming cat. This time, Sam snapped at the plaintiff and bit her hand.

Plaintiff's bite did not appear serious. The receptionist bandaged her hand. Dr. Kern meanwhile completed the catheterization. The treatment was successful, and the plaintiff took Sam home with her. During the night, her hand began to throb. She went to the emergency room for relief; there, the doctor discovered that Sam had severed a tendon in her hand. Plaintiff was hospitalized and treated for the severed tendon. While she was in the hospital, she decided to have Sam put to sleep to avoid any possible recurrence of the blockages.

Plaintiff initiated this action on 15 April 1985 by filing a complaint that alleged that her bite was the result of the defendants' negligence. Defendants each answered. They denied any negligence and asserted plaintiff's contributory negligence and assumption of the risk as further defenses. On 18 November 1985, each defendant moved for summary judgment. A hearing on these motions was held at the 9 December 1985 Session of Superior Court, BUNCOMBE County, before *Judge Lamm,* who entered summary judgment for defendants. Plaintiff appealed to the Court of Appeals, which reversed the trial judge's decision. Defendants allege that Dr. Kern warned the plaintiff not to let the cat bite her after the animal snapped at the veterinarian's assistant; plaintiff denied receiving any such warning. The Court of Appeals held, *inter alia,* that defendants' failure to restrain the cat and the factual controversy over the issuance of a warning were sufficient to take the case to the jury. We disagree.

The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975); *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972). As this Court remarked in *Koontz,* "An issue is

material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz*, 280 N.C. at 518, 186 S.E. 2d at 901. All inferences are to be drawn against the moving party and in favor of the opposing party. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379; *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897.

Defendants in the instant case have met their burden of showing that they are entitled to judgment as a matter of law.

Plaintiff contends, and defendants concede, that she was a business invitee. As such, defendants owed her a duty to exercise ordinary care for her safety while she was on the premises. *Little v. Oil Co.*, 249 N.C. 773, 107 S.E. 2d 729 (1959). This duty includes a duty to maintain the premises in a condition reasonably safe for the contemplated use and a duty to warn of hidden dangers known to or discoverable by the defendants. *Hedrick v. Tigniere*, 267 N.C. 62, 147 S.E. 2d 550 (1966); *see also Mazzacco v. Purcell*, 303 N.C. 493, 279 S.E. 2d 583 (1981). However, it has long been the law in North Carolina that there is no duty to warn an invitee of a hazard obvious to any ordinarily intelligent person using his eyes in an ordinary manner, or one of which the plaintiff had equal or superior knowledge. *See Wren v. Convalescent Home*, 270 N.C. 447, 154 S.E. 2d 483 (1967); *Grady v. Penny Co.*, 260 N.C. 745, 133 S.E. 2d 678 (1963); *Garner v. Greyhound Corp.*, 250 N.C. 151, 108 S.E. 2d 461 (1959); *Little v. Oil Co.*, 249 N.C. 773, 107 S.E. 2d 729. A business proprietor is not an insurer of an invitee's safety. *Wren v. Convalescent Home*, 270 N.C. 447, 154 S.E. 2d 483.

Initially, it may be said that plaintiff's knowledge that the cat might bite under these circumstances was equal or superior to the veterinarian's. Her evidence shows that it was obvious that poor Sam was in pain and that he was struggling to get away; indeed, she acknowledges that she realized this to be the case. The cat belonged to her. "Anyone with normal experience is required to have knowledge of the traits and habits of common animals . . . ." W. Prosser, *Handbook of the Law of Torts* § 33, 197-98 (5th ed. 1984). Plaintiff can therefore be expected to have known that any animal in pain may very well blindly strike out. She was in as good a position as the veterinarian to appreciate the danger that the cat would try to bite someone in his immediate vicinity.

In any event, the facts in the instant case clearly establish that the cat was an obvious hazard to anyone whose hands were only three inches away from its teeth. According to plaintiff's deposition testimony, a similar incident had occurred less than five minutes before the cat bit her; the veterinarian's assistant had "let go" of the squirming animal, who promptly snapped at the assistant. Plaintiff witnessed this incident. The assistant then renewed his grip on the cat, who continued to struggle and obviously continued to be in pain. Plaintiff's deposition testimony attests to Sam's continuing struggles; she also said that she realized when Sam tried to bite the assistant that he was in greater pain than he had been during his two previous catheterizations. Plaintiff's own testimony thus establishes that before the cat bit the plaintiff, he had been unambiguously revealed as a hazard obvious to anyone of ordinary intelligence. Plaintiff does not allege that she was under any disability in this respect. Accordingly, defendants were under no obligation to warn her to keep away from Sam. Even if plaintiff's account is taken as correct and the veterinarian failed to warn her not to let her pet bite her, defendants have violated no duty of care toward her. Because plaintiff's own evidence establishes the absence of a breach of duty on defendants' part, defendants have shown that no issue of material fact remains to be resolved in a trial. They are therefore entitled to judgment as a matter of law. The Court of Appeals thus erred in reversing the trial court's award of summary judgment for defendants.

For the reasons set forth in this opinion, the decision of the Court of Appeals is reversed.

Reversed.

Justices MARTIN and WEBB did not participate in the consideration or decision of this case.