IN THE SUPREME COURT OF NORTH CAROLINA

No. 216A19

Filed 5 June 2020

MILTON DRAUGHON SR., Plaintiff

v.

EVENING STAR HOLINESS CHURCH OF DUNN, Defendant/Third-Party Plaintiff, and DAFFORD FUNERAL HOME, INC., Third-Party Defendant

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 828 S.E.2d 176 (N.C. Ct. App. 2019), reversing and remanding a summary judgment order entered on 4 June 2018 by Judge Beecher R. Gray in Superior Court, Harnett County. On 25 September 2019, the Supreme Court allowed defendant's petition for discretionary review as to additional issues. Heard in the Supreme Court on 10 March 2020.

> *Brent Adams & Associates, by Brenton D. Adams and Mark R. McGrath, for plaintiff-appellee.*
>
> *Yates McLamb & Weyher, by Sean T. Partrick, for defendant/third-party plaintiff-appellant.*
>
> *No brief filed by third-party defendant-appellee.*

NEWBY, Justice.

North Carolina common law establishes a duty of each person to take reasonable care to not harm others and a corresponding duty of each person to take reasonable care to not harm oneself. Recognizing this reasoned balance, this Court has explained that a landowner does not have a duty to warn a visitor about a

condition on the landowner's property that is open and obvious. This Court likewise has emphasized that a defendant is not liable for injuries to a plaintiff when the plaintiff does not take reasonable care to protect himself. Our precedent requires courts to apply an objective reasonable person standard. In this case plaintiff used a set of stairs with a top step that was visibly higher than the other steps and made of noticeably different materials. When plaintiff used the set of stairs a second time, he failed to take the precautions a reasonable person would have taken to avoid tripping on the higher step. Because the alleged defect was open and obvious and thus should have been evident to plaintiff, and because plaintiff did not take reasonable care, the trial court correctly granted summary judgment in favor of defendant. The decision of the Court of Appeals is reversed.

Plaintiff visited defendant's church property for a funeral, and employees of the funeral home asked him to help carry the casket. After plaintiff agreed, he was led through a section of the church building and then outside, down a small set of stairs. He and three others carried the casket from a hearse into the church building, taking the same set of stairs he had just descended. Plaintiff walked sideways as he carried the casket. He watched the doorway instead of where he was stepping. He tripped near the top of the steps, fell into the church building, and was injured.

The set of stairs was fully visible as plaintiff approached it with the casket. It is pictured here:[1]

---

[1] Defendant introduced this picture as an exhibit. It was used in plaintiff's deposition,



The set of stairs includes five steps. Each of the bottom four steps is made of gray concrete and rises about six and one-half inches, or slightly more. The fifth and final step is made of both red brick and gray concrete, initially rising about nine and one-half inches, with a white, wooden platform on top, set a few inches back from the

---

during which plaintiff indicated that he tripped on the last of the concrete steps of normal height and not on the elevated top step. He marked the picture of the set of stairs accordingly when asked to identify where he began to trip. Yet, addressing that causation issue is unnecessary because the evidence establishes that summary judgment in favor of defendant was appropriate on the issues of no duty (because the alleged defect was open and obvious) and contributory negligence.

edge, that adds just over an inch to that height. The total rise of the top step is thus about four inches greater than that of the other steps, constituting about a sixty-one percent increase in rise.

Plaintiff filed a complaint against defendant to recover for his injuries alleging, among other things, that defendant failed to keep its premises in a reasonably safe condition and failed to warn plaintiff of a dangerous and defective condition on the property. Defendant filed an answer, and the parties conducted discovery, including plaintiff's deposition. Defendant then moved for summary judgment, arguing, among other things, that any dangerous condition on the property was open and obvious and that plaintiff was contributorily negligent. The trial court evaluated the evidence presented and decided that, even viewing the facts in the light most favorable to the plaintiff, there was no issue of material fact and that defendant was entitled to summary judgment. A divided panel of the Court of Appeals reversed. It held that genuine issues of material fact existed regarding whether the condition of the top step was open and obvious, whether the top step caused plaintiff's fall, and whether plaintiff was contributorily negligent. *Draughon v. Evening Star Holiness Church of Dunn*, 828 S.E.2d 176, 179–81 (N.C. Ct. App. 2019). The dissent claimed defendant was entitled to judgment as a matter of law because plaintiff was contributorily negligent. *Id.* at 182–83 (Dillon, J., dissenting).

Defendant appealed as of right to this Court based on the dissent, and also filed a petition for discretionary review for this Court to consider additional issues,

including whether the condition of the top step was open and obvious. This Court allowed the petition on 25 September 2019.

We reverse the decision of the Court of Appeals and uphold the trial court's grant of summary judgment. Courts should hesitate to find negligence as a matter of law. But when, as here, uncontroverted facts viewed from an objective standpoint establish that the plaintiff encountered an open and obvious risk, it is appropriate for courts to find as a matter of law that the defendant had no duty to warn the plaintiff or that the plaintiff's claim is barred by contributory negligence.

In a classic negligence action like the one in this case, a plaintiff must present sufficient evidence of four elements to survive a motion to dismiss: (1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the defendant's breach proximately caused harm to the plaintiff, and (4) that the plaintiff has thereby suffered damages. *See, e.g.*, *Hairston v. Alexander Tank and Equip. Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984).

The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party. Nonetheless, our case law has made it clear that when the condition that allegedly caused the injury, viewed objectively, is open and obvious, judgment as a matter of law is appropriate. *See, e.g.*, *Deaton v. Bd. of Trs. of Elon Coll.*, 226 N.C. 433, 439–40, 38 S.E.2d 561, 565–66 (1946) (upholding the trial court's dismissal of the plaintiff's action because, whether or not the plaintiff put on evidence of the defendant's negligence, the condition that caused

the plaintiff's injury was open and obvious).

In North Carolina, a landowner has a duty to warn visitors of any hidden danger on its property of which the landowner should be aware. *See, e.g.*, *id.* at 438, 38 S.E.2d at 564–65 ("The rule applies only to latent dangers which the [visitors] could not reasonably have discovered and of which the [defendant] knew or should have known."). A landowner does not, however, have a duty to warn anyone of a condition that is open and obvious. *Garner v. Atl. Greyhound Corp.*, 250 N.C. 151, 161, 108 S.E.2d 461, 468 (1959) ("Where a condition of premises is obvious . . . generally there is no duty on the part of the owner of the premises to warn of that condition." (alteration in original) (quoting *Benton v. United Bank Bldg. Co.*, 223 N.C. 809, 813, 28 S.E.2d 491, 493 (1944))); *see also Branks v. Kern*, 320 N.C. 621, 624, 359 S.E.2d 780, 782 (1987) (explaining that the duty to warn applies to "*hidden* dangers known to or discoverable by the defendants" (emphasis added)), *abrogated on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998). A condition is open and obvious if it would be detected by "any ordinarily intelligent person using his eyes in an ordinary manner." *Coleman v. Colonial Stores, Inc.*, 259 N.C. 241, 242, 130 S.E.2d 338, 340 (1963). If the condition is open and obvious, a visitor is legally deemed to have equal or superior knowledge to the owner, and thus a warning is unnecessary. *See Branks*, 320 N.C. at 624, 359 S.E.2d at 782 ("[T]here is no duty to warn . . . of a hazard obvious to any ordinarily intelligent person using his eyes in an ordinary manner, or one of which the plaintiff had equal or superior knowledge.").

North Carolina common law also recognizes the defense of contributory negligence; thus, a plaintiff cannot recover for injuries resulting from a defendant's negligence if the plaintiff's own negligence contributed to his injury. *See, e.g.*, *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 677, 268 S.E.2d 504, 509 (1980). This rule is closely related to the principle that a defendant has no duty to warn of an open and obvious condition because a plaintiff is negligent if he fails to reasonably adjust his behavior in light of an obvious risk. *See, e.g.*, *id.* at 673, 268 S.E.2d at 507 ("Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety."). Contributory negligence also implicates proximate cause if a visitor's own lack of ordinary care is a cause of the accident. With contributory negligence, a plaintiff's actual behavior is compared to that of a reasonable person under similar circumstances. *See, e.g.*, *Holland v. Malpass*, 266 N.C. 750, 752–53, 147 S.E.2d 234, 236–37 (1966) (explaining that the invitee of a business must use reasonable care to avoid harm).

Applying these principles, this Court has, on multiple occasions, upheld judgment as a matter of law for the defendant in cases with facts similar to the facts of this case. In *Coleman*, a customer was exiting a grocery store when he tripped on a metal screen jutting out at a right angle from the exit door. 259 N.C. at 242, 130 S.E.2d at 339. The metal screen was in the shape of a right triangle with a base width of about thirty-four inches, a top width of about eight inches, and a height of four and one-half to five feet. *Id.* This Court held that, even though "[t]here was nothing there

to call [the customer's] attention to the metal screen," *id.*, the condition would have been obvious to the ordinary person and so judgment in favor of the defendant was appropriate, *id.* at 242–43, 130 S.E.2d at 340.

In *Garner*, the plaintiff entered the defendant's store at an area where the sidewalk and the floor of the store entryway sat at nearly the same level. 250 N.C. at 153, 108 S.E.2d at 463. After spending about thirty minutes in the store, the plaintiff exited at an area where there was a significant drop-off from the floor of the store to the sidewalk—about six inches. *Id.* She fell and was injured. *Id.* This Court first noted that "[g]enerally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees." *Id.* at 157, 108 S.E.2d at 466 (quoting *Reese v. Piedmont, Inc.*, 240 N.C. 391, 395, 82 S.E.2d 365, 368 (1954)). The plaintiff nonetheless contended that the sidewalk and entryway created a "camouflaging effect," hiding the drop-off. *Id.* at 159, 108 S.E.2d at 467. But this Court went on to hold that the defendant had no duty to warn of the drop-off because it was obvious. *Id.* at 161, 108 S.E.2d at 468. So, a condition may be open and obvious even if the particular plaintiff found it difficult to notice.

Summary judgment is further supported when the plaintiff has had the opportunity to become familiar with the condition that contributes to his injury. In *Dunnevent v. Southern Railroad Co.*, 167 N.C. 232, 233–34, 83 S.E. 347, 347–48 (1914), the plaintiff fell off of the defendant's railroad platform at night. This Court

held that because the plaintiff had become familiar with the platform previously during the day, but chose to walk without his lantern in an area he should have known had no railing, his recovery was barred. *Id.* Likewise, in *Holland*, this Court barred recovery to the plaintiff, an automobile mechanic, who tripped on a common piece of garage equipment that sat on the floor in an area through which the plaintiff had already walked multiple times shortly before the accident. 266 N.C. at 751, 147 S.E.2d at 235–36.

In this case the Court of Appeals majority relied on *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112 (1990), but that case is easily distinguishable. In *Lamm*, the plaintiff walked down a three-step set of brick stairs outside the defendants' office building and slipped after stepping down from the final step. *Id.* at 413–14, 395 S.E.2d at 113. The bottom step had a rise of between seven and one-half and eight and one-half inches, compared to the six and one-half inch rise of the preceding steps. *Id.* at 414, 395 S.E.2d at 114. The plaintiff claimed to have slipped on an asphalt ramp gradually sloping downward away from the bottom step. *Id.* at 414–15, 395 S.E.2d at 114. The Court noted that, though there was an unresolved factual issue about whether the plaintiff's fall was caused by the slant of the asphalt ramp or by the increased rise of the final step, *id.* at 417–18, 395 S.E.2d at 115–16, the depth of the final step could not be said as a matter of law to be open and obvious to someone descending the steps, *id.* at 416–17, 395 S.E.2d at 115.

Though *Lamm* affirms that summary judgment in negligence actions is fairly

rare, the facts in this case make such a judgment markedly more appropriate. Whereas in *Lamm* the difference in rise between the final step and the other steps was one or two inches, here the difference is about four inches. In addition, all of the steps in *Lamm* were made of brick, but the heightened step at issue in this case is made of visibly different materials than the others. Whether summary judgment is appropriate in a given case is driven by the facts of that case. In *Lamm*, the condition of the final step was not sufficiently obvious to warrant summary judgment, but in this case it is.

The task in this case is to determine, based on our precedent, whether the top step outside of defendant's church building was an open and obvious condition such that a reasonably prudent person would have recognized it and taken appropriate care to avoid injury while using it. The distinct height and appearance of the step, the clear visibility of the set of stairs, and plaintiff's previous experience walking down the set of stairs show that a reasonable person in plaintiff's position would have been aware of the step's condition and taken greater care.

The top step is obviously different in height than the other steps. First, the visible part of that step is made mostly of red brick, making its appearance starkly different than that of the other gray concrete steps. The wood on top of that step, which was painted white, only accentuates its distinctiveness. Second, that step rises about nine and one-half inches to the top of the brick, and about ten and one-half inches including the wooden portion on top, compared to the about six and one-half

inch rise of the other steps. All in all, the top step is thus about four inches, or about sixty-one percent, higher than the others. This great difference would be readily apparent to a reasonable person.

At the time of the fall, plaintiff had just walked down the set of stairs, experiencing the difference in the height of the steps firsthand. A reasonable person in plaintiff's position would have become aware of the approximately four-inch difference. Moreover, the top step sits a few feet above the ground; thus, it is at a height plainly visible to someone walking towards the steps and then using them. Common experience dictates that a reasonable person would recognize the starkly different condition of the top step and thus understand that he would have to step up higher when he arrived at it. Viewed objectively, the condition was open and obvious, visible to a reasonable person in plaintiff's situation. Thus, defendant had no duty to warn plaintiff of the condition of the top step.

Relatedly, plaintiff did not take the care that an ordinary person would have taken while carrying the casket up the set of stairs and so was contributorily negligent. As noted, plaintiff had walked down the steps just before his accident, and the set of stairs was fully visible as he and the other individuals carried the casket toward the church building. A reasonable person would have looked and noticed the condition of the top step either before arriving at the stairs or while on the stairs before stepping on the top step. But plaintiff, by his own admission, kept his eyes on the doorway and was not looking at the steps on which he was walking. Common

experience again dictates that a reasonable person would have been aware of the condition and taken greater care. Because plaintiff turned sideways as he walked up the steps, even greater care was required to reasonably ensure a safe ascension. Thus, plaintiff's own negligence contributed to his injury.

We therefore reject plaintiff's contention that based on the evidence issues of fact exist as to whether the condition of the top step was open and obvious and as to whether plaintiff was contributorily negligent. Plaintiff's argument rests largely on his own subjective assertion that the condition of the top step was not open and obvious. He references the opinion of an expert witness he submitted to essentially argue that because the steps leading up to the top step are all of the same height, which is less than the top step, someone walking up the steps could reasonably expect this uniformity in height to continue.

Plaintiff's position, however, gives improper weight to his subjective perspective about the top step instead of recognizing the objective evidence of the true visual appearance of the stairs. The top step stands out both because it is made of strikingly different materials of a different color than the other steps and because it is about four inches higher than the others. Further, because the set of stairs only includes five steps, a reasonable person could easily see the distinctive top step and church entrance before beginning to walk up the steps.

For similar reasons, this Court's opinion in *Garner* undermines plaintiff's concealment argument. In that case, this Court held the defendant had no duty to

warn of a drop-off from the store entryway to the sidewalk even though the plaintiff claimed that the structure of the sidewalk and the entryway concealed the drop-off. 250 N.C. at 159, 161, 108 S.E.2d at 467–68. If the drop-off in *Garner* was open and obvious as a matter of law, regardless of any concealing effect the plaintiff claimed was inherent in its design, so too is the top step here. It is obviously different in height and structure than the other steps. No lulling effect that plaintiff claims is present within the stairs' design changes that. Overall, instead of assessing the condition of the set of stairs from the perspective of an objectively reasonable person as our case law mandates, plaintiff's position wrongly treats as determinative plaintiff's subjective opinion about the visual appearance of the alleged defect.

Because the condition of the top step would be open and obvious to a reasonable person, defendant had no duty to warn plaintiff. Similarly, because plaintiff, after his previous descent of the steps, did not heed the risk obviously presented by the distinct appearance of the top step, and because he carried the casket while walking sideways without looking at the steps, his own negligence contributed to his fall. The Court of Appeals' decision vacating the trial court's grant of summary judgment is reversed.

REVERSED.

Justice EARLS dissenting.

The plaintiff in this case thought he was merely going to attend a funeral, but when asked to help carry the casket up the stairs into the church, his generosity of spirit went badly awry. Falling on the top step, he was injured. As with most cases alleging negligence, questions concerning what caused the fall, whether he should have been warned or should have seen the alleged hazard himself, and whether a reasonable person would have avoided the fall are all questions for a jury of his peers to decide after hearing all the evidence in court.

However, the majority concludes that the evidence is uncontested and establishes as a matter of law both that the allegedly defective condition of the steps at defendant's church was open and obvious and that plaintiff was contributorily negligent. On that basis, the majority reverses the decision of the Court of Appeals reversing the trial court's entry of summary judgment in favor of defendant. In my view, this is not the exceptional negligence case in which summary judgment is appropriate. *See Ragland v. Moore*, 299 N.C. 360, 363, 261 S.E.2d 666, 668 (1980) ("[I]t is only in exceptional negligence cases that summary judgment is appropriate, since the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court." (citing *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972))). Rather, viewing the evidence in the light most favorable to the nonmoving party, as we are bound to do, I conclude that the evidence is sufficient to raise questions for the jury as to whether the allegedly defective condition of the

steps was open and obvious and whether plaintiff was contributorily negligent. It is for the jury, not this Court, to decide what a reasonable person in plaintiff's position would have seen, and it is for the jury, not this Court, to decide whether a reasonable person would have taken precautions to avoid the alleged hazard. Accordingly, I would affirm the decision of the Court of Appeals. Therefore, I respectfully dissent.

<u>Background</u>

On 20 February 2015, plaintiff arrived at defendant's church in Dunn, North Carolina, for a funeral service and entered the church through an entrance facing Sampson Avenue. Before the service began, the minister, who would be conducting the service, asked plaintiff if he would be willing to help carry the casket into the church, and plaintiff declined. Shortly afterwards, plaintiff was again asked to help carry the casket by an employee of third-party defendant, Dafford Funeral Home, Inc. (Dafford). Plaintiff reconsidered and agreed to help.

Plaintiff followed the Dafford employee out of the church through a doorway facing U.S. Route 421. It was daytime, and the weather was sunny. The doorway opened onto a set of steps, which plaintiff descended before walking to the nearby hearse where the casket was located. Plaintiff and three other men carried the casket back to that same entrance and began lifting the casket up the steps, with plaintiff positioned on the front left side of the casket. Before reaching the doorway, plaintiff tripped at the top of the steps and fell into the church, suffering injuries to both of his

knees.  Plaintiff testified in his deposition that he "tripped on the top step and fell into the church."

As viewed from the ground level outside the church, the stairway at issue has five steps—that is, five risers and five treads, with the fifth riser and tread (the top step) constituting the threshold and the floor of the church.  *See Merriam-Webster's Collegiate Dictionary* 1223 (11th ed. 2003) (defining "step" as "a rest for the foot in ascending or descending," including "one of a series of structures consisting of a riser and a tread"); *see also, e.g., Bohannon v. Leonard-Fitzpatrick-Mueller Stores Co.*, 197 N.C. 755, 755, 150 S.E. 356, 356 (1929) ("The steps of said stairway are constructed of wood.  Each step has a tread of nine inches, and a rise of eight inches.").  The first four steps are concrete, and the risers have a relatively uniform height of six and one-half to seven inches.  The riser of the top step, however, is brick and concrete with a height of nine and one-half inches.  The fifth riser also has "an additional one and one[-]eighth inches of wood on the top position a few inches back from the edge."

On 22 August 2017, plaintiff filed suit against defendant alleging that defendant was negligent in failing to keep its premises in a reasonably safe condition and failing to warn plaintiff of the dangerous and defective condition of the steps leading into the church.  Plaintiff alleged that he "was walking up the steps of the church building, when his left foot caught onto the lip of the top step leading into the church," causing him to fall.  In response, defendant filed an answer in which it alleged that plaintiff was contributorily negligent, and defendant also filed a third-

party complaint against Dafford for contribution and indemnification. Plaintiff filed an amended complaint on 5 March 2018. Plaintiff testified in a deposition on 15 February 2018.

On 19 April 2018, defendant filed a motion for summary judgment arguing, *inter alia*, that if the steps constituted a dangerous condition, it was an open and obvious condition of which plaintiff had equal or superior knowledge. Plaintiff filed a response in opposition to defendant's motion, as well as an affidavit in which he averred the following:

> 5. That the defect in the stairs leading up to the church sanctuary and described in the Complaint, which is incorporated herein by reference, is not open and obvious and cannot be perceived by the naked eye at a reasonable distance while climbing those stairs.
>
> 6. That the defective condition of the stairs could not be perceived while walking down the stairs or while walking up the stairs.
>
> 7. As I stated in my deposition on Page 76, I tripped on the top step and fell into the church.
>
> 8. I did not say, as incorrectly alleged in the Defendant's motion for summary judgment, that I could not say what caused my slip and fall. On the contrary, I testified on Page 76 of my deposition that I fell because I tripped on the top stairs of entrance to the sanctuary of the church and fell into the church.
>
> . . . .
>
> 15. The only difficulty I had with respect to moving the casket into the church was the top stair, which was unusually high, and I did not anticipate that I would

-4-

need to lift my foot higher than I was required to lift my feet in order to climb the other stairs.

16.     That the weight of the casket had actually nothing to do with my fall.  My fall occurred solely because I tripped on the top stair of the staircase leading into the sanctuary as alleged in the complaint.

Plaintiff also submitted an affidavit from an engineering expert, Dr. Rolin F. Barrett,

P.E., who examined the steps at issue and averred the following:

9.     . . . I measured the steps and it was found that the risers (vertical component of steps) on the first four steps were relatively uniform and measured six and one half inches to seven inches high.  However the riser of the top step leading to the door had nine and one half inches of brick and concrete plus an additional one and one eighth inches of wood on the top position a few inches back from the edge.

10.     That based upon my examination of the premises in question, which includes the steps leading into the sanctuary of the Evening Star Holiness Church of Dunn, I have made the following findings and hold the opinions set out below.

11.     Risers of steps need to be uniform and building codes state that risers of steps should be uninform [sic].  The date the steps were built was not available to me.  Several building codes were examined spanning the last fifty years and all codes state that risers should be uniform.  Some of these building codes specify a maximum height for the risers and for those that do, the maximum height noted was seven and three fourths inches.  The stairs that Mr. Draughon fell upon did not comply with any of the building codes I reviewed.

12.     That aside from the issues arising from the violation of the building codes I reviewed, and in addition thereto, it is my opinion as a professional licensed engineer that the stairs in question were defective by virtue of the

fact that the top step was significantly higher than the lower steps.

13. From a human factors engineering standpoint, the public who use the stairs become accustomed to the height of the first four steps and is entitled to assume that the last step would be of a height equal to the first four (4) steps.

14. Furthermore, it is my opinion that the stairway that Milton Draughon fell upon:

    a. was defective,
    b. was not constructed in a workman like manner,
    c. was in an unsafe condition,
    d. was unreasonably unsafe,
    e. had steps that created an unsafe structural defect,
    f. was not in a fit and habitable condition,
    g. failed to provide the service for which they were intended.

Following a hearing held on 21 May 2018, the trial court entered an order on 4 June 2018 granting defendant's motion for summary judgment. Plaintiff appealed.

At the Court of Appeals, plaintiff argued that the trial court erred in ruling that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. The Court of Appeals majority agreed with plaintiff, concluding first that, taking the evidence in the light most favorable to plaintiff, there were genuine issues of material fact regarding whether the steps constituted a hidden defect of which defendant had a duty to warn plaintiff and whether plaintiff, having descended the steps shortly before falling, had equal or superior knowledge of the alleged defect. *Draughon v. Evening Star Holiness Church of Dunn*, 828 S.E.2d 176,

179–80 (N.C. Ct. App. 2019). The majority rejected defendant's comparisons to prior decisions of the Court of Appeals, determining that the case is more similar to this Court's decision in *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112 (1990). Further, the majority concluded that while portions of plaintiff's deposition testimony tended to indicate that plaintiff tripped on the non-defective fourth step, plaintiff testified that he "tripped on the top step and fell into the church," and therefore, the "testimony concerning the cause of Plaintiff's fall and the role of the fourth step and defective top riser in it raises a factual question for the jury to resolve." *Draughon*, 828 S.E.2d at 180.

Additionally, the majority at the Court of Appeals addressed defendant's argument that plaintiff was contributorily negligent in failing to use a nearby ramp, failing to ask for help in carrying the casket or suggesting the use of a trolley, and climbing the steps sideways while carrying the casket. *Id.* at 181. The majority determined that these assertions of fact are disputed by plaintiff's evidence, which tended to show that the danger was not the carrying of the casket up the steps, "but was instead a hazardous difference in height between the top step and the ones below it." *Id.* The majority noted that plaintiff averred that he is strong and "had no difficulty lifting the casket or carrying the casket." *Id.* According to the majority, a "reasonable and prudent person would not believe taking the adjacent ramp to be necessary, nor feel the need to seek additional help or use a trolley, and we do not believe that carrying a casket up the church steps into the sanctuary for a funeral is

an indisputably negligent act." *Id.* Thus, the majority concluded that when the evidence was viewed in the light most favorable to plaintiff, plaintiff was not contributorily negligent as a matter of law. *Id.* at 180–81.

Writing separately, one member of the panel dissented, agreeing with the majority that plaintiff's evidence was sufficient to reach the jury on the question of whether defendant's negligence was a proximate cause of plaintiff's fall, but concluding that plaintiff's deposition testimony established, as a matter of law, that plaintiff's contributory negligence was a proximate cause of the fall. *Id.* at 182 (Dillon, J., dissenting). The dissenting judge also opined that the alleged defect in the stairway was open and obvious and, noting that the incident occurred during the daytime, determined that plaintiff "had walked down these same steps just minutes prior to the fall, surely noticing the height differential as he stepped from the Church building to the top step." *Id.* at 183.

On 10 June 2019, defendant filed a notice of appeal as of right based on the dissenting opinion in the Court of Appeals pursuant to N.C.G.S. § 7A-30(2). Defendant simultaneously filed a petition for discretionary review as to additional issues, which this Court allowed on 25 September 2019.

## Standard of Review

We review appeals from summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). We review decisions of the Court of Appeals to determine whether there are errors of law. N.C. R. App. P. 16(a).

Analysis

Defendant argues that the Court of Appeals majority erred in determining that defendant was not entitled to summary judgment on the issues of whether defendant had a duty to warn plaintiff of the allegedly defective condition of the steps and whether plaintiff's contributory negligence was a proximate cause of his injuries. With respect to these issues, I conclude the Court of Appeals majority correctly determined that at this stage of the litigation genuine issues of material fact exist and that defendant was not entitled to judgment as a matter of law.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2019). "When considering a motion for summary judgment, the trial [court] must view the presented evidence in a light most favorable to the nonmoving party." *In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576 (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)); *see also Singleton v. Stewart*, 280 N.C. 460, 465, 186 S.E.2d 400, 403 (1972) ("The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." (citations omitted)).

In order to establish a claim of negligence, a plaintiff must show "that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed," and further, that this breach of duty "was the proximate cause of the injury—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." *Mattingly v. N.C. R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961) (citing *Ramsbottom v. Atl. Coast Line R.R. Co.*, 138 N.C. 38, 41, 50 S.E. 448, 449 (1905)); *see also Hart v. Ivey*, 332 N.C. 299, 305, 420 S.E.2d 174, 177–78 (1992) ("Actionable negligence is the failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." (citations omitted)). If a plaintiff is contributorily negligent, however, such "contributory negligence is a bar to recovery from a defendant who commits an act of ordinary negligence." *Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 332 N.C. 645, 648, 423 S.E.2d 72, 73–74 (1992) (citing *Adams ex rel. Adams v. State Bd. of Educ.*, 248 N.C. 506, 511, 103 S.E.2d 854, 857 (1958)); *see also Badders v. Lassiter*, 240 N.C. 413, 417, 82 S.E.2d 357, 360 (1954) ("Plaintiff's negligence need not be the sole proximate cause of the injury to bar recovery. It is enough if it

contribute[s] to the injury as a proximate cause, or one of them." (citing *Marshall v. S. Ry. Co.*, 233 N.C. 38, 42, 62 S.E.2d 489, 492 (1950))).

Relevant to the applicable duty owed by defendant here as the owner of the church, owners and occupiers of property have a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). "This duty includes a duty to maintain the premises in a condition reasonably safe for the contemplated use and a duty to warn of hidden dangers known to or discoverable by the defendants." *Branks v. Kern*, 320 N.C. 621, 624, 359 S.E.2d 780, 782 (1987) (citing *Hedrick v. Tigniere*, 267 N.C. 62, 147 S.E.2d 550 (1966)), *abrogated by Nelson*, 349 N.C. 615, 507 S.E.2d 882.[1] Yet, "there is no duty to warn . . . of a hazard obvious to any ordinarily intelligent person using his eyes in an ordinary manner, or one of which the plaintiff had equal or superior knowledge." *Branks*, 320 N.C. at 624, 359 S.E.2d at 782 (citations omitted). "Reasonable persons are assumed, absent a diversion or distraction, to be vigilant in the avoidance of injury in the face of a known and obvious

---

[1] *Branks v. Kern*, 320 N.C. 621, 359 S.E.2d 780 (1987), as well as several other decisions cited herein, were abrogated by this Court's decision in *Nelson* in the sense that the Court abolished the former distinctions between "invitees" and "licensees." *Nelson v. Freeland*, 349 N.C. 615, 631–33, 507 S.E.2d 882, 892–93 (1998). Yet, as *Branks* and the other cases cited involved invitees, these cases are still applicable because the former duty owed by owners and occupiers of land to invitees now applies to all lawful visitors. *See, e.g.*, *Cobb ex rel. Knight v. Town of Blowing Rock*, 213 N.C. App. 88, 94, 713 S.E.2d 732, 736–37 (2011) (stating that "*Nelson* thus abolished the distinction between 'licensees' and 'invitees' and applied the same standard to all lawful visitors" and that, "[i]n other words, the present standard for *all* lawful visitors is the same as it was prior to *Nelson* for invitees" (citing *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 161, 516 S.E.2d 643, 646 (1999))), *rev'd sub nom. Cobb ex rel. Kight v. Town of Blowing Rock*, 365 N.C. 414, 722 S.E.2d 479 (2012).

danger." *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 66, 414 S.E.2d 339, 344 (1992) (citing *Walker v. Randolph County*, 251 N.C. 805, 112 S.E.2d 551 (1960)), *abrogated by Nelson*, 349 N.C. 615, 507 S.E.2d 882.

Notably, "[s]ummary judgment should rarely be granted in negligence cases." *Moore v. Crumpton*, 306 N.C. 618, 624, 295 S.E.2d 436, 440–41 (1982) (citing *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E.2d 419 (1979)). Rather, "it is only in exceptional negligence cases that summary judgment is appropriate, since the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court." *Ragland*, 299 N.C. at 363, 261 S.E.2d at 668 (citing *Page*, 281 N.C. at 706, 190 S.E.2d at 194). Similarly, "[i]ssues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." *Nicholson v. Am. Safety Util. Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997) (first citing *Lamm*, 327 N.C. at 418, 395 S.E.2d at 116; then citing *Norwood v. Sherwin–Williams Co.*, 303 N.C. 462, 468–69, 279 S.E.2d 559, 563 (1981)). Moreover, "[p]roximate cause is ordinarily a question for the jury. It is to be determined as a fact from the attendant circumstances. Conflicting inferences of causation arising from the evidence carry the case to the jury." *Olan Mills, Inc. of Tenn. v. Cannon Aircraft Exec. Terminal, Inc.*, 273 N.C. 519, 529, 160 S.E.2d 735, 743 (1968) (citing *Pruett v. Inman*, 252 N.C.

520, 526, 114 S.E.2d 360, 364 (1960)); *see also Lamm*, 327 N.C. at 418, 395 S.E.2d at 116 ("The issues of proximate cause and contributory negligence are usually questions for the jury." (citations omitted)).

I. Duty to Warn

Here, defendant first contends that it had no duty to warn plaintiff of the allegedly hazardous condition of the steps because any hazard created by the height of the top step was not hidden, but was open and obvious, and because plaintiff had equal or superior knowledge of the purported hazard. While the majority agrees with defendant's contention, I cannot conclude, based on the evidence before the trial court, that the purportedly hazardous condition of the steps constitutes an open and obvious condition as a matter of law.

Plaintiff stated in his affidavit that the hazardous condition created by the top step "is not open and obvious and cannot be perceived by the naked eye at a reasonable distance while climbing [the] stairs," that the condition "could not be perceived while walking down the stairs or while walking up the stairs," and that he "did not anticipate that [he] would need to lift [his] foot higher than [he] was required to lift [his] feet in order to climb the other stairs." Moreover, the engineering expert retained by plaintiff stated in his affidavit that building codes generally require that the risers of steps be uniform, that the height of the top step exceeded any maximum height limit for steps that he had observed in available building codes, that the steps at issue were "defective" and "unreasonably unsafe," and that, "[f]rom a human

-13-

factors engineering standpoint, the public who use the stairs become accustomed to the height of the first four steps and [are] entitled to assume that the last step would be of a height equal to the first four (4) steps." Certainly, the height of a single step, taken in isolation, is unlikely to amount to a hidden danger. Yet, the thrust of plaintiff's argument here is that the uniformity of the preceding steps lull an individual into instinctually expecting this uniformity in height to continue, leaving the individual unprepared for the unusual deviation in height of the final step, and thereby giving rise to the danger of a trip and fall. Viewing the evidence on this account in the light most favorable to plaintiff, as we are bound to do, I conclude that it is sufficient to raise a question for the jury as to whether the hazardous condition at issue would have been "obvious to any ordinarily intelligent person using his eyes in an ordinary manner." *Branks*, 320 N.C. at 624, 359 S.E.2d at 782 (citations omitted); *see also City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 655, 268 S.E.2d 190, 194 (1980) ("Negligence actions . . . are rarely suited for summary disposition because . . . the standard of care of a reasonably prudent person[ ]is thought to be a matter within the special competence of the jury." (citations omitted)).

The majority asserts that plaintiff's position in this respect is undermined by this Court's decision in *Garner v. Atl. Greyhound Corp.*, 250 N.C. 151, 108 S.E.2d 461 (1959), in which the plaintiff tripped on the raised, sloping entryway leading from the sidewalk into the defendant's shop. While the specifics of the entryway at issue there

are somewhat difficult to succinctly describe,[2] suffice it to say that *Garner* involved a single step in isolation, and therefore does not present the lulling effect allegedly produced here by a single variation in height in an otherwise uniform set of steps. As a result, I view *Garner* as inapposite and cannot agree with the majority's determination that "[i]f the drop-off in *Garner* was open and obvious as a matter of law, regardless of any concealing effect the plaintiff claimed was inherent in its design, so too is the top step here." Further, the majority concludes that "[n]o lulling effect that plaintiff claims is present within the stairs' design changes" the fact that the difference in height and structure of the top step would have been obvious to an objectively reasonable person. In light of the evidence presented, including the affidavit of plaintiff's engineering expert indicating that this lulling effect is the very purpose of uniformity requirements in building codes and stating that the set of steps here were "unreasonably unsafe," and taking the evidence in the light most favorable

---

[2] The Court summarized the plaintiff's description of the entryway as follows:

> In front of the shop is an ordinary concrete sidewalk which slopes downwardly to the south. . . . The entryway is 12 feet wide at the sidewalk and 8 feet 2 inches at the shop doors. It has a depth of 42 inches from the doors to the sidewalk. At the south end of the entryway there is a 6-inch perpendicular drop-off to the sidewalk; in the middle a 3-inch drop-off; and at the north end the entryway and sidewalk are approximately flush. There is a downward slope from the doors toward the sidewalk. The slope is 6/10 of a foot from the doors to the sidewalk, 2 5/16 inches per foot or a slope of 18% to 19%. The entryway is of terrazzo construction and has strips of abrasive material cemented to the terrazzo at intervals of two to three inches to prevent slipping thereon.

*Garner v. Atl. Greyhound Corp.*, 250 N.C. 151, 153, 108 S.E.2d 461, 463 (1959).

to plaintiff, the question of whether the allegedly defective condition of the top step would have been obvious to an objectively reasonable person should be decided by the jury. *See Lease-Afex*, 300 N.C. at 655, 268 S.E.2d at 194 ("Negligence actions, particularly, are rarely suited for summary disposition because one essential element of the action—the standard of care of a reasonably prudent person—is thought to be a matter within the special competence of the jury." (citations omitted)).

Regarding defendant's contention that plaintiff had equal or superior knowledge of the alleged hazard, plaintiff's evidence clearly raises an issue of fact on this issue. In his deposition, plaintiff testified that after descending the steps he was not aware of any dangerous condition and, when asked whether he had "any concern that [he] had to step too far to get to that first step," plaintiff stated, "[n]o, I didn't recognize that." Thus, plaintiff presented evidence showing that he was unaware of the hazardous condition of the steps when he fell; his credibility and the reasonableness of his failure to perceive the alleged hazard are questions for the jury. *See Lease-Afex*, 300 N.C. at 655, 268 S.E.2d at 193–94 ("If there is any question as to the credibility of affiants in a summary judgment motion or if there is a question which can be resolved only by the weight of the evidence, summary judgment should be denied." (citing *Fieldcrest Mills*, 296 N.C. at 470, 251 S.E.2d at 422)).

Defendant's argument in this latter respect appears in earnest to be a contention not that plaintiff had equal or superior knowledge of the alleged hazard, but rather that plaintiff, based on his previous experience using the steps, *should*

*have* had equal or superior knowledge of the hazard. I consider this question as one more properly addressed as an issue of contributory negligence,[3] rather than one of defendant's general duty as a property owner to warn lawful visitors of hidden defects—that is, it is an issue of whether a reasonably prudent person in plaintiff's position, having recently descended the steps without incident, would in the exercise of due care have perceived the danger posed by an otherwise hidden defect. *See, e.g.*, *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980) ("[C]ontributory negligence consists of conduct which fails to conform to an *objective* standard of behavior—'such care as an ordinarily prudent person would exercise *under the same or similar circumstances* to avoid injury.'" (second emphasis added) (quoting *Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965))); *e.g.* *Tyburski v. Stewart*, 204 N.C. App. 540, 546, 694 S.E.2d 422, 426 (2010) ("We conclude that a jury could reasonably find that an ordinarily prudent person *in plaintiff's position* would also have entered the sunroom without concern for the lock after having disengaged it." (emphasis added)). Nonetheless, these issues involve related

---

[3] For instance, in *Holland v. Malpass*, the Court concluded that a "stiff-knee" (a type of car jack) on the floor of an automobile repair garage did not constitute a hidden danger given that "[w]alk spaces past work benches and around vehicles under repair in a busy automobile garage are not infrequently used as places for the temporary deposit of tools, equipment and parts." 266 N.C. 750, 752, 147 S.E.2d 234, 236 (1966). The Court then *also* concluded that the plaintiff, "an experienced garage worker," who worked for the defendant for four months in the same garage at issue, was contributorily negligent in that he "failed to look before he stepped where he should have anticipated some obstruction was likely." *Id.* at 752, 147 S.E.2d at 236–37. Defendant contends that *Holland* is controlling because it is "sufficiently analogous" to the case here. Given the substantial differences between aisles in a "busy automobile garage" and the steps entering a church, as well as the substantial experience of the plaintiff in *Holland* with respect to working in automobile garages, including working in the specific garage at issue for four months, I consider *Holland* inapposite to the issues presented here.

-17-

inquiries. For example, if a hazardous condition is open and obvious, or if a plaintiff has equal or superior knowledge of the hazard, then not only does defendant owe no duty to warn of that hazard, *Branks*, 320 N.C. at 624, 359 S.E.2d at 782, but it is also contributory negligence for a plaintiff to proceed with knowledge of the hazard or to fail to perceive the obvious hazard through his or her failure to exercise due care, *see, e.g.*, *Dunnevent v. S. Ry. Co.*, 167 N.C. 232, 232, 83 S.E. 347, 348 (1914) (stating that the plaintiff was contributorily negligent where, "[w]ith full knowledge of the dangerous conditions, and with his own lantern that had lighted his way to the station sitting by his side, he voluntarily went to the east platform in the darkness, where he knew the conditions were dangerous"); *Allsup v. McVille, Inc.*, 139 N.C. App. 415, 416, 533 S.E.2d 823, 824 (2000) ("The doctrine of contributory negligence will preclude a defendant's liability if the visitor actually knew of the unsafe condition or if a hazard should have been obvious to a reasonable person." (citing *Pulley v. Rex Hosp.*, 326 N.C. 701, 705, 392 S.E.2d 380, 383 (1990))), *aff'd per curiam*, 353 N.C. 359, 543 S.E.2d 476 (2001). Ultimately, regardless of whether the issue raised by defendant here is addressed in the context of a defendant's duty to warn or in the context of a plaintiff's contributory negligence, "the facts must be viewed *in their totality* to determine if there are factors which make the existence of a defect[,] . . . in light of the surrounding conditions, a breach of the defendant's duty and less than 'obvious' to the plaintiff."[4] *Pulley*, 326 N.C. at 706, 392 S.E.2d at 384, *abrogated by*

---

[4] Defendant argues that the Court of Appeals majority erred in applying this Court's decision

*Nelson*, 349 N.C. 615, 507 S.E.2d 882; *see also, e.g.*, *Dowless v. Kroger Co.*, 148 N.C. App. 168, 171, 557 S.E.2d 607, 609 (2001) ("Whether construed in terms of negating a defendant's duty to warn, or in terms of establishing a plaintiff's contributory negligence, it is clear that a plaintiff may not recover in a negligence action where the hazard in question should have been obvious to a person using reasonable care under the circumstances.").

Here, in viewing the evidence in the light most favorable to plaintiff, I cannot conclude that plaintiff's prior use of the steps renders the hazardous condition of the top step "obvious" as a matter of law. It is far from implausible that following a single descent of the steps, aided by gravity, the allegedly inconspicuous variation in height of the fifth riser (or, when descending, the first riser) would escape the notice of a reasonably prudent person who was previously unfamiliar with the steps at issue. While a jury would certainly be free to make such a finding, just as it would be free to find that any danger posed by the top step is an open and obvious hazard regardless of plaintiff's prior experience using the steps, I would not remove the question from the jury's consideration at this stage of the litigation.

II.  Contributory Negligence

---

in *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112 (1990), by requiring actual knowledge from a plaintiff in order for a condition to be open and obvious, disregarding the question of whether plaintiff had constructive knowledge of the hazardous condition based on his prior use of the steps. This appears to simply reflect confusion over whether such constructive notice should be analyzed alongside defendant's duty to warn or with plaintiff's alleged contributory negligence. The majority below clearly considered defendant's prior use of the steps in its analysis and I do not view the majority's decision as being in conflict with *Lamm*.

Defendant next contends that the evidence before the trial court established plaintiff's contributory negligence as a matter of law. Plaintiff argues that the record reveals genuine issues of material fact regarding his contributory negligence that preclude the entry of summary judgment in this case. I conclude that the issue of plaintiff's contributory negligence is properly for the jury.

As an initial matter, defendant asserts that plaintiff was contributorily negligent "because he walked into a danger that was open and obvious." The majority here agrees. However, in light of the fact that the alleged danger was, in my view, not open and obvious as a matter of law, this argument too must fail.

Defendant, echoing the opinion of the dissenting judge below, further contends that plaintiff's deposition testimony establishes that plaintiff actually tripped on the non-defective fourth step, as opposed to the defective top step leading into the church, and therefore, plaintiff was contributorily negligent as a matter of law and the alleged defect was not the proximate cause of plaintiff's fall. Having found plaintiff contributorily negligent by not looking and noticing the condition of the top step, the majority does not consider this argument. Defendant focuses in particular on the following exchange from plaintiff's deposition:

> Q. What is shown in this photo?
>
> A. Okay, this is the step and the entry to the church. Now, when I'm saying top step, I'm saying right—right, you know what I mean, in this here. What I tripped on is this part right here going up into the church.

Q.      So I have got a blue pen and I'm going to write on the back here, make sure my pen is working.  I'm going to hand you this blue pen and I would like you to make an X, a small X on the photo where you say you tripped.

A.      Okay, I started tripping right along here.  (Witness marking).

Q.      Make it as dark as you can so we can see it.  Can I see where you made the mark?

A.      Okay.

Q.      So are you saying you tripped on the brick or the white wooden door threshold?

A.      I'm saying I started—started tripping right in here.

Q.      So what you're saying is, you are pointing to the concrete is where you started tripping.  There's a step that has a mat in there.  Do you see that?  You see the top step has a, looks like a rubber mat there?

A.      Right.

Q.      Are you tripping where that step begins, or are you tripping on the brick, or are you tripping on the white door threshold?  What are you tripping on first?

A.      I'm tripping on this step here, and this threshold, whatever you call it here.  That's what I'm going down.

Q.      Are you tripping on concrete or brick?

A.      Both of them, really.

Q.      Which one do you trip on first?

A.      Well, it would have to be that one first because it comes first.

Q.      Which one?  The concrete?

> A.   Yeah, it would have to be that.
>
> Q.   Would it be the front of the concrete you trip on, that step of concrete?
>
> A.   No, it would have to be [the] front of it.

This portion of deposition testimony is ambiguous, and given the imprecise language and terminology used, as well as the area indicated by plaintiff on the photograph, it is unclear whether plaintiff, in attempting to communicate the step or the area where he "started tripping," was identifying the specific riser upon which his forward foot first became entangled, as opposed to the tread upon which his rear leg would have been standing when he first "started tripping." The ambiguity in this portion of plaintiff's deposition testimony is further heightened given the fact that while the risers and treads of the first four steps are all concrete, the riser of the allegedly defective top step is brick *and* concrete, with an additional recessed portion of wood as well. Moreover, the tread of the top step—that is, the floor of the church—is also concrete. As plaintiff testified:

> A.   When I went down, I went down on the inside. That's where I landed at.
>
> . . . .
>
> Q.   And when you say your legs and knees hit the ground, did they come into contact with the ground outside the door entrance?
>
> A.   No, inside.
>
> Q.   Inside. That floor, I think, is that concrete?

-22-

A.     Concrete.

Significantly, I note that plaintiff also testified as follows:

Q.     And so is there any problem carrying this casket the 25 to 30 feet to the bottom of the stairs?

A.     No problem.

Q.     Describe for me what happens as you're going up the stairs.

A.     Then we started going up the stairs and I can remember hearing Mr. McCoy saying, you guys slow down. I can remember that. And as we went up the stairs, next thing I know I was missing, *stumbling across that first step*, and right down onto that concrete floor, both knees.

Q.     Let me go back and ask you this. Help me understand what happened here. Are you already on the top step and you're trying to then step into the church and that's when you trip? Or are you tripping on the top step?

A.     *I tripped on the top step and fell into the church.*

(Emphases added.) Plaintiff reiterated in his affidavit that, "[a]s [he] stated in [his] deposition on Page 76, [he] tripped on the top step and fell into the church," and that "[t]he only difficulty [he] had with respect to moving the casket into the church was the top stair, which was unusually high, and [he] did not anticipate that [he] would need to lift [his] foot higher than [he] was required to lift [his] feet in order to climb the other stairs."

Viewing the evidence as a whole in the light most favorable to plaintiff, I cannot conclude that the portion of deposition testimony relied upon by defendant

-23-

clearly establishes that plaintiff tripped on the riser of the non-defective fourth step or that plaintiff was contributorily negligent as a matter of law. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 117 (2011) (stating that on review from summary judgment "we view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor." (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 662, 488 S.E.2d 215, 221 (1997))). Drawing such an inference would be contrary to the crux of plaintiff's entire case. As plaintiff alleged in both his original and amended complaint, he "was walking up the steps of the church building, when his left foot caught onto the lip of the top step leading into the church," causing him to fall.

Finally, defendant argues that plaintiff was contributorily negligent in: (1) failing to use a nearby ramp instead of the steps at issue; (2) agreeing to carry the casket with only four people; (3) failing to suggest the use of a trolley to move the casket into the church; and (4) turning sideways while climbing the steps with the casket. With respect to these contentions, I agree with the Court of Appeals majority below that in light of plaintiff's testimony that carrying the casket had no effect on his ability to climb the steps and that he could not, by the naked eye or by descending the steps previously, perceive the difference in height of the top step, a reasonable and prudent person would not know to take any precautions. Thus, unaware of the defect, a reasonably prudent person would not believe that it was necessary to take a

ramp, seek additional help, use a trolley, or adjust his position. Therefore, because carrying a casket into a church for a funeral is not indisputably negligent, I "cannot conclude that, as a matter of law, Plaintiff was contributorily negligent in electing to utilize the apparently safe stairs." *Draughon*, 828 S.E.2d at 181. In short, these are all matters for a jury to decide.

## Conclusion

In this case, when the evidence is viewed in the light most favorable to plaintiff, it does not establish as a matter of law that the allegedly defective condition of the steps was open and obvious or that plaintiff was contributorily negligent. As such, this is not the "exceptional negligence case[ ]" in which "summary judgment is appropriate." *Ragland*, 299 N.C. at 363, 261 S.E.2d at 668 (citing *Page*, 281 N.C. at 706, 190 S.E.2d at 194). For the reasons stated herein, I would affirm the decision of the Court of Appeals reversing the trial court's entry of summary judgment in favor of defendant. Accordingly, I respectfully dissent.

Justices HUDSON and MORGAN join in this dissenting opinion.